UNITED STATES et al. v. PRESTON et al.
(two cases).

Nos. 13103, 12962.

United States Court of Appeals
Ninth Circuit.

March 16, 1953.

Wm. Amory Underhill, Asst. Atty. Gen., Walter S. Binns, U. S. Atty., Los Angeles, Cal., Irl D. Brett, Sp. Asst. to the Atty. Gen., Roger P. Marquis and John C. Harrington, Washington, D. C., for appellants.

John W. Preston, Oliver O. Clark, David D. Sallee, Los Angeles, Cal., for appellees.

Before STEPHENS and ORR, Circuit Judges, and McCORMICK, District Judge.

STEPHENS, Circuit Judge.

The appeals in these actions concern attorney fees for services rendered certain persons of the Palm Springs Band of Mission Indians. We set out in a note at the end of this opinion citation of the several court decisions and opinions, with topical reference. Suffice it to say that the Indian clients of appellees were awarded allotments through the litigation and the attorneys were awarded fees in accordance with a given percentage of the value of the allotments, and liens were impressed upon the allotted lands for payment of the fees. Upon appeal to this court the employment of attorneys was upheld but payments upon percentages of the value of the allotted lands recovered, were held void. We found that the statute, authorizing the suits, did not leave the Indians free to employ attorneys except upon a quantum meruit basis, and we affirmed the right of the court to impress liens on the lands for the sums found as reasonable and due. Upon remand, District Judge Cavanah, in case No. 12962 (Eleuteria Brown Arenas), and Judge Mathes in case No. 13103 (Lee Arenas), heard evidence and fixed sums as the reasonable value of the services rendered, and impressed liens upon the land therefor.

The government presents several points upon which it contends reversal of the judgments must be ordered. One of the points is that the trial courts had no legal right to impress the liens upon the lands. We are satisfied that our affirmance of the right of the trial courts to impress liens upon the lands to secure the payment of reasonable attorney fees was right, and now reaffirm it.

One of the most important elements that goes to the make-up of a quantum meruit award is the value of the issue litigated. Appellants raise several questions as to the land value-evidence received in each case, which would be highly important if the cases were in eminent domain. And, too, these questions would be highly important if the fee to be fixed should be through a percentage-of-value formula. Neither is the case here. The judge needs only the approximate value of the land in order to estimate the effect the element of value should have in fixing a reasonable fee. We think the judge in each case accepted the best evidence offered for the purpose and applied such weight to it as he thought proper.

Another point made is of very considerable importance. It is: Should the allotted lands be valued as though free from United States governmental restrictions? Allotments are held under governmental trust, and certain restrictions, which we set out in the margin.[1] In remanding these cases

1. 25 U.S.C.A. § 348. Patents to be Held in Trust; Descent and Partition. "Upon the approval of the allotments provided for in sections 331 to 334, inclusive, and 336 by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare

to the district court for determination of attorney fees on a quantum meruit basis, we said, 181 F.2d 62, 67: "The district court should have proceeded expressly to fix the dollar value of the services performed as the basis for the sum secured by the lien and in so doing should have considered and determined the value of the thing secured by the litigation, namely, the reasonable value of the Indian's interest in the allotted land under the trust patent, as one of the elements to be taken into consideration." The Indian in each case will get the fee simple title to his allotted land, including possession and the unrestricted ownership of any income produced therefrom. Restrictions on alienation of and encumbrance on the land are fully set out in footnote 1.

■ It is certainly true that if the value of the lands were being fixed in transfer in the real estate market, the restriction on alienation would undoubtedly depress the market value. The Indian wanted his allotment, and the attorneys were successful in getting it for him. He knew, and the attorneys knew, it would be with the restrictions. But the restrictions are for the sole benefit of the Indian. The restrictions are not interests owned by another which could be cancelled or modified for a price. They constitute a sort of bond by the government to the Indian that his property cannot be frittered away, and it will not be presumed that the government's supervision of any transfer of the land will be arbitrary or to the detriment of the ward. Notwithstanding the restrictions, all income from the land is free from restrictions. It certainly is not unreasonable to believe that, should it appear to be good business, the govern-

ment would consent to a sale though the proceeds might well be protected by the government. The courts were right in finding from witnesses the approximate value of the fee title to the land as one of the important elements in arriving at sums of money which would fairly compensate the attorneys for the skill they used, for the time they employed, and for the chances they took, of being compensated at all for their services.

■ Another question in the cases is the time at which the approximate value of the lands should be ascertained. The trial of the cases was in 1948, and the retrial as to the attorney fees was in 1950. There is evidence that the value of the lands dropped as much as 20% between 1948 and 1950. The influence on the attorney fees of this large differential in value might be very considerable. We think the value of the property as it appears nearest to the time when the judgments awarding the allotments to the Indians became final, should be applied to the problem of fixing reasonable fees, and that, of course, is the 1948 value.

■ Of concern only to case No. 12962 (Eleuteria Brown Arenas) is the award of $5,000 additional attorney fees in that case for services rendered in the case No. 13103 (Lee Arenas). Apparently, this award was made upon the theory that preparation in case No. 13103, or parent case, was worth $5,000 as preparation in the case which followed. But in each case the full reasonable sum is allowed, leaving no support for the addition of the $5,000. This sum will be disallowed and the judgment is reduced accordingly.

that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotments shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: *Provided*, That the President of the United States may in any case

in his discretion extend the period. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void: *Provided*, That the law of descent and partition in force in the State or Territory where such lands are situate shall apply thereto after patents therefor have been executed and delivered, except as herein otherwise provided * * *." [Here follows details concerning possible sale to the United States.]

The judgment in case No. 13103 is affirmed.[2]

As amended, the judgment in Case No. 12962 is affirmed.

2. The litigation of the Palm Springs Band of Mission Indians in a test case to recover certain allotments of land under the Act of 1894, 28 Stat. 286, 305, as amended, 25 U.S.C.A. § 345; is as follows:

Arenas v. United States, 1942, D.C., S.D.Cal., No. 1321 O'C-Civil, in which the District Court rendered a summary judgment of dismissal, was affirmed by the Ninth Circuit in 1943, 137 F.2d 199, but was reversed by the Supreme Court in 1944, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363.

After the decision of the District Court S.D.Cal. in 1945, 60 F.Supp. 411, establishing the right of the Indian and his heirs to an allotment certificate was affirmed in part and reversed in part by the Ninth Circuit in 1946, 158 F.2d 730, the Supreme Court denied certiorari, 1947, 331 U.S. 842, 67 S.Ct. 1532, 91 L.Ed. 1853.

The Indian's right to certain allotments having been determined, the following litigation as to attorney fees ensued:

Arenas v. Preston, 1948, D.C., S.D. Cal., No. 1321 O'C-Civil, in which the District Court awarded attorney fees and impressed a lien on the land for the recovery of the fees, was affirmed in part, reversed in part, and remanded by the Ninth Circuit in 1950, 181 F.2d 62. The District Court's judgment on demand in 1951, S.D.Cal., No. 1321 O'C-Civil, is appellate case No. 13103, decided herein.

Arenas v. Preston, 1949, D.C., S.D. Cal., No. 6221 PH-Civil, in which the District Court awarded attorney fees and impressed a lien on the land for the recovery of the fees, was affirmed in part, reversed in part, and remanded by the Ninth Circuit in 1950, 181 F.2d 69. The District Court's judgment on remand in 1951, S.D.Cal., No. 622(sic) PH-Civil, is appellate case No. 12962, decided herein.