Hymen SCHLESINGER and David A. Hensler, Petitioners,

v.

Hon. Hubert TEITELBAUM, United States District Judge, et al., Respondent.

No. 73–1091.

United States Court of Appeals, Third Circuit.

Submitted Feb. 1, 1973.

Decided March 9, 1973.

Hymen Schlesinger, Pittsburgh, Pa., for petitioners.

Richard L. Thornburgh, U. S. Atty., Henry G. Barr, Asst. U. S. Atty., for Teitelbaum.

Loyal H. Gregg, of Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., for Point Towing, River Transp. and M. G. Transport.

Before VAN DUSEN and ADAMS, Circuit Judges, and BARLOW, District Judge.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case, where petitioners (a seaman and his attorney) request issuance of a writ of mandamus and prohibition, presents the issue of whether a district court may establish a schedule of contingent fees for use in personal injury actions brought by seamen, providing that such fees or lesser fees considered as guidelines shall be deemed to be fair and reasonable and that any fees in excess of such schedule shall constitute the exaction of unreasonable compensation in violation of the Code of Professional Responsibility of the American Bar Association (see below at page 7) unless a showing is made justifying higher compensation based on unusual circumstances. Compare Special Rule 4 Regulating Conduct of Attorneys of the First and Second Judicial Departments of New York, as reproduced at note 1 in Gair v. Peck, 6 N.Y.2d 97, 188 N.Y.S.2d 491, 160 N.E.2d 43, 45–46 (1959), cert. denied, 361 U.S. 374, 80 S.Ct. 401, 4 L. Ed.2d 380 (1960).

This Petition for Writ of Mandamus and Prohibition (hereafter Petition) alleges that petitioner Hensler filed an action as a seaman for personal injuries against the corporate respondents in the district court on April 5, 1971. The amended complaint alleges that such petitioner, while complying with the command of the vessel on which he was employed, "was caused to slip on the barge and his foot and leg were badly mashed and injured when the same was caught between the vessel and the barge," and that the injuries and disabilities suffered were due to the negligence of the corporate respondents and the unseaworthiness of the vessel. During the course of the trial, a compromise settlement of $17,500 was agreed upon by the parties and approved by the trial judge. Although the court was informed (paragraph 3 of the Petition) that counsel fees of one-third of the settlement had been agreed upon by Hensler and his attorney (petitioner Schlesinger),[1] the trial judge stated that seamen were

---

1. The record does not make clear whether the contingent fee agreement between the petitioners was executed before or after the establishment by the district court of its guideline schedule (adopted on 4/20/71) of fees in personal injury actions for seamen (16a).

wards of the court and that "a fair fee in this case for representation of this [plaintiff], who is a seaman and ward of the court," (11a) was the amount set forth in "a schedule that the court applies in seamen's cases" (8a), which schedule is "a guideline which I see fit to follow" (12a).[2] The schedule provided for 33⅓% for the first $10,000. of recovery and 25% above that amount on the next $90,000. of recovery (16a). The court rule (adopted in April 1971) provides that this schedule is to be the guideline "pending further study of the problem" (16a and paragraph 6 of Petition). The court added: "I have exercised my discretion and I have said what the fee is" (12a).

In addition to the above schedule, Local Rule 20 of the district court provides for court approval of all settlements in actions to which a seaman is a party. Paragraph (d) of this Rule provides: "The court . . . shall make an order approving . . . any settlement entered into by the proctor or attorney and the seaman for payment of counsel fees . . . out of the fund created by the . . . settlement . . . ; or the Court may make such order as it deems proper, fixing counsel fees. . . . The court shall then order the balance of the fund to be paid to the seaman. . . ." The order challenged by this Petition provided as follows:

"AND NOW, to wit, this 11th day of December, 1972, in consideration of the plaintiff's Petition for Compromise Settlement, in light of the general guidelines of this court regarding fees of counsel after the settlement of a seaman's action, and with reference to the services rendered by plaintiff's counsel in this particular seaman's ac-

tion, IT IS ORDERED that a reasonable and appropriate fee for plaintiff's counsel in this action be and hereby is awarded in the amount of $5,208.33 (33% of $10,000.00 plus 25% of $7,500.00). IT IS FURTHER ORDERED that the $625.00 which represents the difference between the counsel fee allowed herein and the fee which the plaintiff by prearrangement agreed to pay his counsel (33% of the amount of recovery) shall be and hereby is placed in escrow with the Clerk of Court pending resolution of the plaintiff's counsel's contention that he is absolutely entitled to the fee agreed to between him and his client. IT IS FURTHER ORDERED that accordingly the Petition for Compromise Settlement be and hereby is granted."

At the hearing held November 13, 1972, on the application of petitioners to use a larger percentage of the settlement for counsel fees than is permitted by the court's tentative guidelines, petitioners produced no time records to justify the higher fee provided for in the contingent fee agreement and no facts showing the fee produced by the guidelines to be unfair have been alleged in this Petition.

■ It is well recognized that the court has the power to set fees in cases involving persons of presumed incapacity to look after their affairs intelligently. See McKinnon, Contingent Fees for Legal Services,[3] pp. 23 & 44;[4] Cappel v. Adams, 434 F.2d 1278, 1279–1280 (5th Cir. 1970); United States v. Preston, 202 F.2d 740 (9th Cir. 1953)—Indian tribes not allowed to enter contingent fee contracts for certain claims. In the *Cappel* case, *supra*, Judge Wisdom used

2. Paragraph 8 of the Petition states that "the amount of $625.00 represent[s] the difference between the fee agreed upon between plaintiff and his attorney, $5833.33, and the fee fixed by the Court, $5208.33, pending resolution of the controversy (19a)."

3. This is a Report of the American Bar Foundation, published by Aldine Publishing Company, Chicago (1964).

4. The court acts in such cases under its equity jurisdiction over fiduciary relations.

this langauge at pages 1279–1280 of 434 F.2d:

"  .  .  .  Judge Murrah of the Tenth Circuit has well stated the applicable rule:

> where an attorney recovers a fund in a suit under a contract with a client providing that he shall be compensated only out of the fund he creates, the court having jurisdiction of the subject matter of the suit has power to fix the attorney's compensation and direct its payment out of the fund.

Garrett v. McRee, 10 Cir. 1953, 201 F.2d 250, 253. [Citing cases.] The sum determined to be a reasonable attorney's fee is within the discretion of the district court; before a reviewing court should disturb the holding there should be a clear showing that the trial judge abused his discretion. Garrett v. McRee, 10 Cir. 1953, 201 F.2d 250, 254; Monaghan v. Hill, 9 Cir. 1944, 140 F.2d 31, 34. There is no such showing in this case.

"Splawn does not dispute the validity of these principles, but contends that they are inapplicable in a case in which the attorney has a valid contract fixing his fee. The action of the district court in these circumstances, Splawn argues, interferes with the right of the attorney and his client to establish the attorney's fee by mutual agreement, 'without being restrained by the law.' We cannot agree.

    *     *     *     *     *     *

"  .  .  .  [T]he right to contract for a contingent fee has never been thought to be unrestrained. . . . Contingent fee contracts have been especially subject to restriction when the client is a minor, largely because of the obvious possibilities of unfair advantage. Moreover, courts have refused to enforce contingent fee arrangements when the amount of the fee seemed excessive. . . .

"  .  .  .  Judge Murrah did not condition his holding in Garrett v.

McRee, *supra*, upon the non-existence of an express contingent fee arrangement; indeed, it appears to have been argued specially that the attorneys involved had valid one-third contingent fee contracts."

As recently as 1971, the Supreme Court of the United States has said in United States Bulk Carriers v. Arquelles, 400 U.S. 351, 355, 91 S.Ct. 409, 412, 27 L.Ed. 2d 456 (1971):

> "Seamen from the start were wards of admiralty. . . . The federal courts remained as the guardians of seamen, the agencies chosen by Congress to enforce their rights—a guardian concept which, so far as wage claims are concerned, is not much different from what it was in the 18th century."

In Isbrandtsen Co. v. Johnson, 343 U.S. 779, at pp. 782, 783, 784, 72 S.Ct. 1011 at pp. 1014, 1015, 96 L.Ed. 1294 (1952), the court had said:

> "Whenever congressional legislation in aid of seamen has been considered here since 1872, this Court has emphasized that such legislation is largely remedial and calls for liberal interpretation in favor of the seamen. The history and scope of the legislation is reviewed in Aguilar v. Standard Oil Co., 318 U.S. 724, 727–735, 63 S.Ct. 930, 932, 936, 87 L.Ed. 1107 and notes. 'Our historic national policy, both legislative and judicial, points the other way [from burdening seamen]. Congress has generally sought to safeguard seamen's rights.' Garrett v. Moore-McCormack Co., 317 U.S. 239, 246, 63 S.Ct. 246, 251, 87 L.Ed. 239. '[T]he maritime law by inveterate tradition has made the ordinary seaman a member of a favored class. He is a "ward of the admiralty," often ignored and helpless, and so in need of protection against himself as well as others. . . . Discrimination may thus be rational in respect of remedies for wages.' [Citing cases.] 'The ancient characterization of seamen as "wards of admiralty" is even more ac-

curate now than it was formerly.' [Citing cases.]

"Congressional legislation now touches nearly every phase of a seaman's life. It concerns itself with his personal safety, comfort and health in many ways not necessary to review here. It deals specifically with his shipping articles and the payment to him of his wages."

█ Also, in its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members, including the charges of contingent fees. See Gair v. Peck, *supra*; [5] EC2–20, DR2–106(A) & (B)(8), EC5–7, and DR5–103(A)(2) of Code of Professional Responsibility of ABA; Peyton v. Margiotti, 398 Pa. 86, 156 A.2d 865, 867 (1959), where the court said "Contingent fees . . . are a special concern of the law . . . "; New Jersey cases cited in McKinnon, *supra*, at note 61 on page 60, where the author states in the text (page 44):

"Some courts have, upon objection by the client to payment of a contingent fee, applied the usual stringent tests for contracts made between a fiduciary and *cestui que trust*. The attorney has the burden of showing absence of fraud and the reasonableness of the contract. In some cases the standard appears to be similar to that applied to a fiduciary's contracts of other types. Other decisions seem to reflect a special concern with contingent fee contracts. In these, courts tend to review the fairness of the contract even if the evidence for reliance by the client to the attorney as to terms of the contract is quite thin." [6]

██ Rule 83 of the Federal Rules of Civil Procedure grants the district courts the power to "make and amend rules governing its practice," and the

---

5. In Gair v. Peck, *supra*, the court said at pages 51 & 53 of 160 N.E.2d:

"The rule-making power is not limited to prescribing only for the specific case after the event. The idea that imposition by lawyers on their clients, oppressive and unconscionable fee agreements or similar conduct is beyond the rule-making power of the court has no shadow of foundation. The idea is frivolous that disciplinary power over attorneys is unrelated to the exaction of excessive fees. Nor are the Appellate Divisions so helpless as to be denied the power of censure or of taking more incisive disciplinary action to curb the practice of excessive exactions against clients merely for the reason that the client himself has not elected to contest payment of the fee. The duty and function of the Appellate Divisions to keep the house of law in order does not hinge upon whether clients, worn down by injuries, delay, financial need and counsel holding the purse strings of settlement, knowing little about law or lawyers, have had the stamina to resist in court by hiring other lawyers to be paid out of the other half of the recovery for defending against the first lawyer. . . .

\* \* \* \* \*

". . . It lay within the competence of the [Court] to adopt [the] rule . . . as a procedural aid in render-

ing effectual its disciplinary power over attorneys in the case of unlawful contingent fees. The so-called fee schedule merely determines where the burden of proof shall lie in the determination of the censurability of contingent fees in the individual case. Neither plaintiffs nor any segment of the Bar have a vested interest in the exaction of unlawful fees, which is all that this rule is fashioned to prevent, nor can they be heard to say that the Appellate Division is precluded from taking preventive measures for the reason that the client has decided not to litigate the fee. The contention that this is a fee-limiting measure is reduced to an argument that lawyers cannot be disciplined for accepting fees which would be uncollectible in court, if the clients defended on the ground that they are so out of proportion to the value of the work as to be unconscionable."

6. Also in McKinnon, *supra*, at page 413, this language is used:

". . . the general view in all jurisdictions seems to be that this right to make fee contracts is limited by the basic power of courts to prevent unprofessional conduct by its officers and the power of the legislature to regulate fees in the public interest."

Supreme Court of the United States has recognized the inherent power of such courts to take appropriate action to secure the just and prompt disposition of cases. See Link v. Wabash Railroad Co., 370 U.S. 626, 630–631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Ex parte Peterson, 253 U.S. 300, 314, 40 S.Ct. 543, 64 L.Ed. 919 (1920).[7] The district court had power to adopt the above-described rule of April 1971 insofar as it applies to a seaman's personal injury action such as the suit of petitioner Hensler.

■ On the facts presented by this record, we hold that petitioners cannot rely simply on an allegation of the existence of a contingent fee agreement, which may have been dated after the establishment of the court's tentative guidelines, to nullify such guidelines as "discriminatory, ulta vires and violative of due process" as a denial of petitioners' contract rights (par. 10 of Petition).

■ As noted above, petitioners were given a hearing in the district court on their contention that plaintiff's counsel was entitled to payment in accordance with the contingent fee agreement and no time records or other evidence supporting the fairness of that contingent fee agreement was supplied. Furthermore, no allegations or exhibits to the above-mentioned Petition filed in this court show the fairness of the $5,833.33 fee claimed by such counsel, even though the petitioners have the burden of proof in this application for a writ of mandamus and prohibition. See Solomon et al. v. Continental American Life Insurance Company et al. and Coolahan, 472 F.2d 1043, Opinion filed Jan. 23, 1973 (3d Cir.). There is no showing that the district court rule does any more than establish guidelines for reasonable fees in a case such as this, and petitioners had the opportunity to place in the record any special circumstances justifying the fee claimed by the attorney. Our holding in this case is narrowly limited solely to the situation presented by this record.

It is suggested that, in its regulation of seamen's, as well as other, contingent fees by use of guidelines, the district court should give the members of its bar at some point, preferably as soon as possible since the guidelines have been in force for almost two years, an opportunity to present their views and factual data on such guidelines. Compare United Transportation Union v. Michigan Bar, 401 U.S. 576, 91 S.Ct. 1076, 28 L. Ed.2d 339 (1971), and cases there cited; M. Schwartz & J. Mitchell, "An Economic Analysis of the Contingent Fee in Personal Injury Litigation," 22 Stanford L.Rev. 1125 (1970).

The petition will be denied.

---

7. See, also, Pennsylvania cases supporting the disciplinary power of the court over the members of its Bar cited in In Re Schlesinger, 404 Pa. 584, 172 A.2d 835, 856 (1961)—dissenting opinion.