### In Re David GOLDSTEIN

**David Goldstein, Movant–Appellant,**

**Helen Rosario, as Administratrix of the estate of Nelson Rosario, Plaintiff–Appellee,**

**v.**

**St. Luke's–Roosevelt Hospital Center, Western Queens Community Hospital, Arun J. Palkhiwala also known as Aroon J. Palkhiwala, Mitchell Geizhals and John Does, Defendants.**

**Docket No. 04–2462–CV.**

United States Court of Appeals, Second Circuit.

Argued: May 17, 2005.

Decided: Nov. 17, 2005.

---

Charles E. Knapp, Law Office of Charles E. Knapp, P.C., New York, New York for Appellant.

Before: WINTER, KATZMANN, Circuit Judges and KRAVITZ,* District Judge.

PER CURIAM.

David Goldstein represented Helen Rosario in the wrongful death action underlying this appeal. Pursuant to Rule 83.2(b) of the Local Civil Rules for the Eastern District of New York, he moved before Judge Gleeson for approval of a settlement and for an award of fees and costs to be paid from the settlement. The district court reduced his requested fees and costs and ordered pertinent records of the proceeding to be referred to the appropriate disciplinary committees. We affirm.

## BACKGROUND

On September 8, 2000, Goldstein filed suit on behalf of plaintiff Helen Rosario as Administratrix of the estate of Nelson Rosario, her husband, under a variety of legal theories against several hospitals and physicians. The complaint alleged that

* The Honorable Mark R. Kravitz, United States District Judge for the District of Connecticut, sitting by designation.

defendants denied Nelson medical treatment because he was infected with HIV. The ensuing proceedings were acrimonious, and the parties frequently involved the district judge and the assigned magistrate judge, Roanne L. Mann, in their disputes. Several directives were issued ordering the parties to confer in good faith prior to seeking judicial intervention; others were issued admonishing Goldstein not to delay; and still more were issued ordering Goldstein to comply with previous orders.

On April 29, 2002, a settlement conference was held before the magistrate judge during which she recommended a $350,000 settlement. After a few weeks, the parties accepted the proposal, and counsel were instructed to finalize the settlement within a month. In ordering such finalization, however, the magistrate judge did not contemplate the time needed for plaintiff to satisfy Local Civil Rule 83.2(b). That Rule provides that in any action for wrongful death, the court shall approve the terms of any settlement where "required by statute or otherwise" and "shall approve an attorney's fee only upon application in accordance with the provisions of the New York State statutes and rules." E.D.N.Y. Civ. R. 83.2(b).

When, on June 17, 2002, the parties had not submitted settlement documents, the magistrate judge ordered plaintiff to seek the requisite court approval under Local Civil Rule 83.2 no later than August 5, 2002 or face dismissal of the case. In a bare-bones, three-sentence letter dated August 5, 2002, Goldstein asked Judge Gleeson to approve the settlement. Goldstein claims that the magistrate judge and defense counsel were copied on said submissions. Judge Gleeson received the letter only on August 12, 2002. Meanwhile, on August 7, 2002, not having received the letter allegedly sent to Judge Gleeson

seeking Rule 83.2 approval, the magistrate judge issued an Order to Show Cause why sanctions, including dismissal of the action should not be imposed for violation of the June 17, 2002 order.

In a letter dated August 13, 2002, and filed with the clerk's office on August 14, 2002, Goldstein explained that his response to the Order to Show Cause had been delayed because: (i) the order had been inadvertently stapled to another fax; (ii) he was obtaining approval from Judge Gleeson but Judge Gleeson's chambers was closed until August 19, 2002; and (iii) although he had copied the magistrate judge on his letter to Judge Gleeson seeking approval, it must not have arrived prior to issuance of her August 7, 2002 directive. On August 14, 2002, the magistrate judge deemed the Order to Show Cause satisfied.

On August 26, 2002, Judge Gleeson filed an endorsement of Goldstein's letter seeking approval of the proposed settlement. Because Goldstein had included no affirmation or explanation of the need for court approval, Judge Gleeson endorsed the request while stating that it was "far from clear to [him] that [his] approval is necessary." In a later oral ruling, Judge Gleeson stated that had there been an explanation by Goldstein of the settlement and the circumstances causing a need for approval, he would have immediately referred it to the magistrate judge for a hearing. Judge Gleeson also stated that, for a variety of reasons, he believed that the letter dated August 5, 2002, but received by him on August 12, 2002, was backdated by Goldstein and created in response to the magistrate judge's Order to Show Cause of August 7, 2002.

In a letter dated May 7, 2003, defense counsel asked that the magistrate judge dismiss the action based on Goldstein's failure to consummate the settlement. At

the time, however, Judge Gleeson had already approved the settlement and the case had been closed for almost a year. On May 16, 2003, Goldstein served defense counsel with stipulations of discontinuance and releases as well as an affidavit from plaintiff. Plaintiff's affidavit requested that the matter be settled and noted that she was consulting with another attorney regarding the matter. Goldstein apparently intended the affidavit to serve as explanation for the long delay. Goldstein also wrote to Judge Gleeson conceding that the settlement had not been consummated.

Defense counsel rejected the settlement forms sent by Goldstein because they lacked necessary language and further wrote apologetically to the magistrate judge requesting "guidance in attempting to deal with plaintiff's counsel's conduct." The magistrate judge issued an order requiring plaintiff's counsel to show cause in person why he should not be denied fees in the matter and why his conduct should not be reported to the appropriate disciplinary bodies.

At the show cause hearing, Goldstein's version of events and explanation for the delay conflicted with those of: (i) defense counsel, who claimed they had never been served with settlement documents or notified that Goldstein was not going to surrogate court; (ii) Goldstein's client, Rosario, who stated that she was not the cause of delay as claimed by Goldstein but was in fact desperate to settle; and (iii) the magistrate judge's law clerk, who had been told via phone by Goldstein numerous times that the settlement delay was due to delay in the surrogate court rather than the result of Goldstein's client as Goldstein insisted at the hearing. Goldstein claimed at the hearing that he was able to prove his story to be the truth but was not at that time prepared to do so.

As the hearing progressed, the magistrate judge objected to giving Goldstein his full contingency fee of thirty percent of the first $250,000 awarded and twenty-five percent of any amount awarded over $250,000. In support of his belief that he should be paid in full, Goldstein offered to show the magistrate judge his bills. At that point, defense counsel speculated that Goldstein's bills might be suspect, noting that one of plaintiff's experts listed his fees as $1,200.00 while Goldstein claimed it to be $8,650.00. The magistrate judge then noted that a myriad of cases had languished because of Goldstein's lack of attention and disregard of court orders. She also noted that she had recommended sanctions against him in at least one other case. The conference ended with the understanding that the parties would either finalize the settlement, leaving open the issue of fees and costs, or, if no agreement could be reached, Goldstein would have to move to reopen the case.

After a conference on July 25, 2003, Judge Gleeson ordered the case reopened; gave deadlines for its conclusion; and referred the issue of fees and costs to the magistrate judge for a report and recommendation. On July 30, 2003, the magistrate judge directed Goldstein to produce various records related to fees and costs. He did not do so.

The parties unsuccessfully attempted to finalize the settlement. On November 18, 2003, Rosario wrote directly to Judge Gleeson asking for help in obtaining her settlement monies due to Goldstein's failure to aid her. Judge Gleeson referred the matter to the magistrate judge.

On January 13, 2004, the magistrate judge issued a Report and Recommendation ("R & R") recommending that Goldstein's fee be reduced from over $94,869.58 to $20,000; that his expenses be reduced from $20,521.66 to $2,500; and that his

conduct be reported to the appropriate disciplinary committees. Goldstein submitted objections to the R & R. On March 19, 2004, a conference before Judge Gleeson was held on Goldstein's objections, although Goldstein himself was not present due to a recent car accident. Judge Gleeson sustained Goldstein's objections to the magistrate judge's recommendation based on alleged misconduct in other cases, but otherwise adopted the R & R. In response to Goldstein's claimed explanations for his behavior, Judge Gleeson said Goldstein would have the opportunity to make such arguments before the appropriate disciplinary committees in mitigation of any sanctions they chose to impose.

Judge Gleeson subsequently issued an order that directed the clerk to disburse Goldstein's fees and expenses, send the balance to plaintiff, and then send a copy of the order, its attachments, and a transcript of the minutes of the March 19, 2004 proceedings to the Grievance Committees for the First Department in New York and for the United States District Court for the Eastern District of New York.

## DISCUSSION

As authority for reducing Goldstein's fees and referring his case to the disciplinary committee, the magistrate judge relied upon: (i) the court's inherent authority to regulate attorneys' fees; (ii) the court's express authority to review the fairness of fees in wrongful death actions; and (iii) the court's power to reduce or deny fees based on counsel's misconduct.

■ A federal court possesses certain inherent powers "to discipline attorneys who appear before it." *Chambers v. NAS-CO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). These includes the powers to "police the conduct of attorneys as officers of the court" and to impose sanctions for attorney misconduct. *United*

*States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000). In exercising these inherent powers, courts "have the right to inquire into fee arrangements ... to protect the client from excessive fees." *In re Michaelson*, 511 F.2d 882, 888 (9th Cir.1975), and "may order attorneys to return fees the client has paid pursuant to a contract." *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 98–99 (2d Cir.2003) (citing *In re Taylor*, 511 A.2d 386, 386 (D.C. 1986)); *see also Rosquist v. The Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir.1982) ("Courts have a stake in attorney's fees contracts; the fairness of the terms reflects directly on the court and its bar."); *Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3d Cir.1973) ("[I]n its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members, including the charges of contingency fees.").

■ Therefore, the district court also had ample authority to reduce Goldstein's fees, and the principal issue is whether it did so correctly. When an award of attorney's fees is based on statute or contract, we review a decision to reduce an attorney's fee for abuse of discretion. *See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 402 F.3d 332, 335 (2d Cir.2005) ("We generally review a district court's award of attorneys' fees under the IDEA for abuse of discretion."); *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir.2004) ("We review an award of attorneys' fees [under 42 U.S.C. § 1983] for abuse of discretion."); *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir.2004) ("Where a district court has awarded attorneys' fees under a valid contractual authorization, we recognize that it has broad discretion in doing so, 'and an award of such fees may be set aside only for abuse of discretion.'") (quoting *McGuire v. Russell Miller, Inc.*, 1 F.3d

1306, 1313 (2d Cir.1993)). Other circuits also have adhered to an abuse of discretion standard when reviewing attorneys' fees. *See, e.g., Rosquist,* 692 F.2d at 1111–12 ("[I]t is within the court's inherent power of supervision over the bar to examine the attorney's fee" for reasonableness, and "[o]ur standard of review is the traditional one: whether the district court abused its discretion by reducing the fee in this particular situation."); *Schlesinger,* 475 F.2d at 140 ("The sum determined to be a reasonable attorney's fee is within the discretion of the district court; before a reviewing court should disturb the holding there should be a clear showing that the trial judge abused his discretion.") (citations omitted). We also review a district court's decision to impose sanctions for abuse of discretion. *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 333 (2d Cir. 1999); *see also Storey v. Cello Holdings, L.L.C.,* 347 F.3d 370, 387 (2d Cir.2003) (Rule 11 sanctions); *Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 95 (2d Cir.1997) (sanction orders reviewable under *Cohen* collateral order doctrine).

■ Goldstein's arguments regarding the reduction of his fees demonstrate no error, much less an abuse of discretion. When asked to provide evidence of his disbursements, he did not do so. That failure and the treatment of his client, who had to personally seek the court's aid in forcing Goldstein to complete the settlement, alone justify the reduced award. Finally, Goldstein advances a due process argument to the effect that he did not have appropriate notice of the possibility of a fee reduction. In rejecting that argument, we need note only that when Goldstein moved under Local Rule 83.2(b) for approval of the request for fees and costs, he thereby opened up the issue of the quality, or lack thereof, of his representation and the reasonableness of his fees.

On oral argument, it became clear that Goldstein is also appealing from the portion of the district court's order referring his conduct to the disciplinary committees. We first address whether we have jurisdiction to review such an order.

One court has held that if such an order "does not rise to the level of a sanction order, then [the attorney] has 'nothing from which to appeal,' and we lack jurisdiction." *Teaford v. Ford Motor Co.,* 338 F.3d 1179, 1181 (10th Cir.2003) (quoting *United States v. Gonzales,* 344 F.3d 1036,-1039 (10th Cir.2003)). In *Teaford,* the court concluded that the sending of a hearing transcript to the state bar association was not "sufficiently injurious" to give appellant standing to appeal. *Id.* In so concluding, the court relied upon the fact that the district court's letter of referral made "no specific finding of misconduct" nor "express[ed] any opinion of [the attorney's] actions." *Id.* at 1181–82. Other courts appear to take a contrary view. *See, e.g., Walker v. Mesquite Tex.,* 129 F.3d 831, 832–33 (5th Cir.1997) ("[T]he importance of an attorney's professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability or other punishment as a requisite for the appeal of a court order finding professional misconduct.").

■ We hold that we have jurisdiction over Goldstein's appeal of the referral to the disciplinary committees. The referral was included in the court's judgment and was to be implemented by the Clerk of Court. It was in the nature of a sanction. Even though appellant was not in any way foreclosed from explaining or justifying his actions to the disciplinary authorities or from arguing that no disciplinary action was appropriate, such an order has reputational consequences and potential costs in responding to the referral. Moreover, in *Teaford,* the district court simply referred

the attorney in question without making any specific findings of misconduct or expressing any opinion of the attorney's actions. In the present case, the magistrate judge's R & R, which explicitly concluded that Goldstein was in violation of various disciplinary rules, in other cases as well as this one, and stated that he "was unprepared to conduct himself as an officer of the court," was attached to the court's judgment. *See United States v. Talao,* 222 F.3d 1133, 1137–38 (9th Cir.2000) (appellate jurisdiction was proper where the district court found violation of specific rule of professional conduct, an action which "carries consequences similar to the consequences of a reprimand"). Therefore, the court's referral amounted to much more than implied criticism, and, like other sanctions, we deem it reviewable. *See, e.g., MacDraw, Inc. v. CIT Group Equip. Fin., Inc.,* 138 F.3d 33, 37 (2d Cir.1998); *but cf. In re Vebeliunas,* 246 B.R. 172, 174 (S.D.N.Y.2000) (holding that "factual findings and judicial criticism that are not expressly denominated as sanctions are not reviewable on appeal").

▉ However, the scope of our review is narrow. We review for prejudicial procedural error, clear error in findings of fact, and abuse of discretion in the sanction imposed. *Mackler Prods., Inc. v. Cohen,* 225 F.3d 136, 141 (2d Cir.2000). There was no procedural error. When Goldstein sought a fee award, he put in issue his entire conduct of the case. There are no material factual disputes. It is undisputed on the present record that his representation was of such dismal quality that his client had to personally seek the court's aid just to get the settlement finalized. A colorable breach of Goldstein's representational duties appeared on the face of the record, and the referral was therefore not an abuse of discretion.

## CONCLUSION

For the above stated reasons, we affirm. Goldstein's brief indicates that the funds have not yet been dispersed to Ms. Rosario. Consequently, we direct that the mandate issue forthwith.