35 F.3d 556
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Betty Ann JENKINS, Plaintiff-Appellee,
v.
George McCOY, Defendant-Appellant,
and
All Unknown Agents; THE United States Attorney General;
Cabell County Jail; Karen Williams; Administrator of
Cabell County Jail; Cabell Huntington Hospital,
Incorporated; United States of America; Dallan Fields;
Robert L. Bailey,Jr.; County Commission of Cabell County,
WV; Unknown Named U.S. Marshals; Unknown Named Agents
Off.B.I., Defendants.
 No. 93-6919.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1994.
Decided Sept. 14, 1994.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. Charles H. Haden II, Chief District Judge. (CA-90-526)
 Robert Carter Elkins, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, W.Va., for appellant.
 William Robert Hamlin, Wood, Grimm & Delp, Huntington, W.Va., for appellee.
 On Brief: Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, W.Va., for appellant.
 Amy M. Herrenkohl, Wood, Grimm & Delp, Huntington, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before RUSSELL and MICHAEL, Circuit Judges, and JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 I. Introduction
 
 1
 On July 16, 1993, a jury found appellant McCoy, a corrections officer at the Cabell County Jail, in Huntington, West Virginia, liable for multiple civil claims arising from his rape of appellee Betty Ann Jenkins, a detainee,[1] on December 23, 1988. He appeals numerous rulings of the trial Court. This Court reviews evidentiary rulings, including the admissibility of expert testimony, for abuse of discretion. Distaff v. Springfield Contracting, 984 F.2d 108 (4th Cir.1993). We review the refusal to grant McCoy's motion for judgment as a matter of law for a determination whether there was sufficient evidence to support the verdict, Tights v. Acme-McCrary, 541 F.2d 1047 (4th Cir.1976), and the Court's refusal to grant a mistrial and the Court's order requiring defendant to pay plaintiff's witness fees prior to trial for abuse of discretion. United States v. West, 877 F.2d 281 (4th Cir.1989); U.S. Marshal's Service v. Means, 741 F.2d 1053 (8th Cir.1984). Based on the Court's review of the various issues McCoy raises, which are each addressed separately below, we affirm the judgment of the District Court.
 
 II. Evidentiary Issues
 
 2
 Jenkins argued in opening argument and elicited through the testimony of her witnesses that the investigation conducted by the prison into McCoy's assault on her was inadequate. To rebut this claim, McCoy attempted to call the prosecutor who handled the criminal case against him. The District Court forbade McCoy from questioning the prosecutor on the grounds that the instant proceedings were civil and therefore the prosecutor's testimony was irrelevant. McCoy also argued that his sole reason for questioning the prosecutor was to dispute the alleged inadequacy of the investigation, and he asked the Court for a limiting instruction that the investigation was not part of plaintiff's claim as an alternative to calling the prosecutor. The Court refused to give this instruction. McCoy appeals both rulings. Since the jury was not asked to determine if McCoy's co-defendants conspired to avoid adequately investigating the incident, and since this Court agrees that testimony relating to prior criminal proceedings is irrelevant, this Court finds that the trial Court did not abuse its discretion in making these rulings.
 
 
 3
 McCoy also challenges the trial Court's exclusion of statements that Deputy Kisor (the Deputy in charge conducting the investigation) took from three inmates, and testimony from Kisor regarding handwritten notes he received from an inmate during the course of his investigation. These were excluded on the basis that they are hearsay and were prepared in anticipation of litigation. McCoy appeals the exclusion, alleging that the statements taken by Kisor and his investigative summary should have been admitted as a hearsay exception under Federal Rule of Evidence (F.R.E.) 803(8)(c) (allows the admission of government reports containing factual findings and opinions if the contents are trustworthy). He also argues that the excluded evidence was crucial to his defense because it suggested another possible source of the semen found on Jenkins.
 
 
 4
 In this case, there is reason to question the trustworthiness of the evidence sought to be admitted. Kisor and McCoy were co-workers and Kisor worked for the Sheriff's Department, which was a named defendant. Moreover, Kisor did not ordinarily perform investigations, and standard procedure was to have an outside agency investigate wrongdoing at the jail. Therefore, the trial Court's ruling was not an abuse of discretion.
 
 
 5
 McCoy raises an additional argument pursuant to F.R.E. 803(8)(c) with respect to a report prepared by U.S. Marshal Tom Chenault, who went to the jail the day of the assault and interviewed the plaintiff and Dallan Fields, the jail administrator. From these interviews Chenault prepared a report, which the judge excluded on the grounds that it contained self-serving and irrelevant information and was prepared in anticipation of litigation. McCoy asserts that the report was crucial to his defense since it suggested Jenkins had threatened to make a false sexual assault accusation in the past and had motive to do so here (in order to be transferred to the jail in which her sister was incarcerated). The trial Court did not abuse its discretion in finding the report inadmissible under 803(8)(c). Even if it had, however, the error was harmless. McCoy offered Chenault's report in order to provide evidence about the alleged prior threat to make a false assault accusation. As is analyzed below, the trial Court permissibly excluded other evidence that McCoy offered to demonstrate the exact same thing, and the same rationale is equally applicable to the evidence in Chenault's report.
 
 
 6
 The trial Court refused to hear testimony from or accept the report of a Corrections Officer at another institution, who intended to testify that Jenkins threatened to falsely accuse him of raping her about ten months prior to the McCoy incident. The Court found the report to be presumptively admissible under F.R.E. 803(6) (records of regularly conducted activity), but that it could not be admitted under F.R.E. 608(b)(1) (specific instances of conduct concerning a witness' character for truthfulness), since the defendant confronted the plaintiff with the allegation and she denied it. The Court also found that F.R.E. 405(b) (allowing proof of character with specific instances of conduct in cases where character is an essential element) did not allow the evidence to come in since character was not an essential element in the case. The Court next analyzed F.R.E. 404(b) (evidence of other crimes may come in as proof of motive, opportunity, etc.) and held that none of its exceptions applied. Lastly, the trial judge asserted that under F.R.E. 403 the danger of unfair prejudice or confusion outweighed any probative value the evidence might have. None of these bases for excluding this evidence constitutes an abuse of discretion.
 
 
 7
 III. Deliberate Indifference to Serious Medical Need
 
 
 8
 At the close of plaintiff's evidence and again at the close of all of the evidence, McCoy argues that the trial Court erroneously failed to grant his motion for judgment as a matter of law on plaintiff's claim of deliberate indifference to her serious medical or psychological need. Jenkins claimed that between the alleged rape on December 23, 1988 and the time she left the jail on January 3, 1989, the defendants were deliberately indifferent because no one at the jail recommended that Jenkins be evaluated for psychological injuries.[2] There can be no deliberate indifference claim when there exists no objective evidence the prisoner had a serious need for such attention. Belcher v. Oliver, 898 F.2d 32, 35 (4th Cir.1990). The jury clearly had basis from the evidence for believing that Jenkins suffered severe psychological injury resulting from the rape. Moreover, the jury also had a basis for believing that she began to exhibit objective indicia of this injury while at the jail, as she wrote "Officer George raped me December 23rd, 1988" all over the walls of her cell. A jury certainly could have concluded that the handwriting on the wall was, metaphorically speaking, exactly that, and that the defendants should have seen it. This, in combination with the fact that it should be obvious even to a layman that severe psychological injury commonly results from rape, leads this Court to conclude that there was substantial evidence to support a finding of deliberate indifference.
 
 
 9
 McCoy also alleges error based upon the fact that the Judge allowed the jury to consider whether he had been deliberately indifferent to Jenkins' serious medical need, even though he had no interaction with her after the rape. Since only McCoy was found to have violated Jenkins' rights, he contends there is no way to tell how much of the damages against him were based on the deliberate indifference claim. This argument is meritless. The jury concluded that McCoy committed the rape. Given his knowledge that the rape occurred and the reasonable presumption that any layman would know about the psychological injury associated with rape, the court rightly allowed the jury to hold him liable for deliberate indifference. Moreover, even if this Court had found it to be an error, the amount of damages awarded, $65,000 in compensatory damages and $35,000 in punitive damages, was not excessive based solely on the other claims. Therefore, the defendant cannot demonstrate that the Court allowing this claim to go before the jury harmed him in any way.
 
 IV. Damages for Future Medical Need
 
 10
 McCoy urges that the District Court also committed error in its failure to set aside an award of damages for future medical needs. He argues that the plaintiff failed to prove to a reasonable degree of certainty the need for the future psychological treatment, for which the jury awarded $15,000. McCoy claims that since the jury awarded no damages for future mental anguish, no damages for future treatment can be sustained. However, Jenkins' expert, Dr. Rosewater, testified Jenkins suffered from Post Traumatic Stress Disorder, ("PTSD"), and that her symptoms were consistent with Rape Trauma Syndrome, ("RTS"), a subcategory of PTSD where the stressor is rape. Dr. Rosewater testified that Jenkins would probably need at least an hour per week of therapy for a year in order to recover. This clearly constitutes enough evidence to sustain a verdict on the issue of future treatment.
 
 
 11
 In the alternative, McCoy alleges that there was insufficient evidence to support the amount of the jury's award for future medical costs. Dr. Rosewater testified that the cost of Jenkins' future therapy would depend on costs in the individual region, yet she also testified that she worked in Cleveland, Ohio and did not know what the going rate was in Wheeling, W.Va. (Jenkins' home). Since those two cities are in the same region of the country, Dr. Rosewater's testimony that she charges $95/hr. in Cleveland is sufficient to establish the applicable rate. One year of therapy would therefore cost $4,940, ($95 X 52=$4,940), which is roughly a third of the damages awarded. Since the expert testified that one hour a week for a year was a minimum, the jury certainly could have sought to ensure that Jenkins was adequately compensated in the not unlikely event that she required more intensive therapy or therapy for a longer period of time. Approximately three times the minimum cost of cure does not strike the Court as being unreasonable.
 
 V. Rape Trauma Syndrome
 
 12
 McCoy also argues that Dr. Rosewater's testimony pertaining to Rape Trauma Syndrome should have been excluded under F.R.E. 702 (relating to expert testimony) and 403.[3] This Court disagrees. The testimony certainly could have assisted the trier of fact in determining whether Jenkins was actually raped. This is especially so since defendant's argument is that Jenkins lied about the rape. Her testimony also was clearly indispensable on the issue of damages. Therefore, Rule 702 does not preclude its admission. Moreover, Dr. Rosewater did not testify that Jenkins suffered from RTS. Rather, she testified that Jenkins suffered from PTSD that was consistent with RTS. Dr. Rosewater also did not express an opinion as to whether defendant raped plaintiff. Both of these factors mitigated any prejudice the defendant claims to have suffered. Therefore, although this Court believes that the proper balance to be struck under F.R.E. 403 in these circumstances raises a very difficult issue, this Court cannot say that the District Court abused its discretion in allowing Dr. Rosewater's testimony to be admitted.
 
 
 13
 VI. Jenkins' Claim that McCoy Viewed Her While She was Naked
 
 
 14
 McCoy also assigns error for the trial Court's refusal to grant his motion for judgment as a matter of law on plaintiff's claim that he viewed her naked. Jenkins and another female inmate testified that the toilet and shower were in plain view of the catwalk on which the guards walked and that male guards would walk onto that section without announcing their presence. There is no direct evidence that McCoy actually viewed Jenkins from the catwalk, although there is no doubt that McCoy was one of the guards who could have viewed the plaintiff. More importantly, however, Jenkins testified that just before McCoy raped her, she exited her shower and found McCoy in her cell. A jury certainly could have based the improper viewing claim on that event. However, even if the Court's ruling had been in error, the error would once again be harmless, since the award was not excessive in relation to the rape claim alone.
 
 VII. Witness Fees
 
 15
 McCoy also argues that the trial court abused its discretion in requiring him to pay witness fees for trial witnesses subpoenaed by Jenkins. In U.S. Marshal's Service v. Means, 741 F.2d 1053, 1059 (8th Cir.1984), the Court held that F.R.E. 706(b) (compensation for court-appointed experts) is an equitable procedure which the District Court has discretion to use. Jenkins had no funds with which to prosecute her claims and her Court appointed attorney absorbed $15,000 in prosecuting this case. Moreover, eleven of the witnesses were employees or former employees of the Sheriff's department, whom McCoy could have had appear without being served. Given the Court's holding in Means, the trial Court in the instant case did not abuse its discretion.
 
 VIII. Motion for Mistrial
 
 16
 Juror Anita Walker failed to respond during voir dire to questions about any association she may have had with the Cabell County Jail. During trial, defendant learned that Walker's former husband had been incarcerated there, and was subsequently killed during a prison riot (allegedly because he was an informant for the Cabell County Sheriff's Department), and that she had filed a wrongful death action against the West Virginia Department of Corrections. The Court removed Walker, but denied the defendant's motion for a mistrial. The Court found that the defense waived the motion for mistrial because when the Court inquired if there was anything the lawyers wanted asked of the juror, they did not request that the Court question her as to whether she had spoken to other jurors. Since there is no evidence to suggest the denial prejudiced the defendant, and since the Court acted within its discretion, this Court sees no reason to grant a new trial on these grounds.
 
 IX. Pretrial Detainee Status
 
 17
 Lastly, McCoy argues that the trial Court erred in determining that Jenkins' status was that of a pretrial detainee. On December 23, 1988, she was awaiting trial on two federal drug charges; however, she was also serving a five year probation sentence for a prior criminal offense. McCoy argues that since Jenkins had not completed her probation, she had the status of a convicted inmate. This argument is meritless. Jenkins was incarcerated because she could not post bond on pending charges, not because of any previous conviction. Therefore, she clearly was a pretrial detainee. Moreover, even if the trial Court's conclusion that she was a pretrial detainee had been in error, such error would be harmless, since the constitutional violations alleged are so grave.
 
 X. Conclusion
 
 18
 For the above stated reasons, the judgment of the District Court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Jenkins was in federal custody but was housed in a county institution
 
 
 [2]
 Jenkins never requested psychological services at the jail, although she did undergo counseling during her subsequent incarceration in a federal institution. A failure to make such a request cannot be dispositive, as it might be as indicative of total psychological breakdown as of lack of need, and sheds no light on whether the defendants were actually deliberately indifferent to a serious medical need
 
 
 [3]
 Their motion in limine to exclude Dr. Rosewater's testimony was denied