Betty Ann JENKINS, Plaintiff,

v.

George McCOY, et al., Defendants.

No. 3:90–0526.

United States District Court,
S.D. West Virginia,
Huntington Division.

April 13, 1995.

Robert W. Hamlin, Wood, Grimm & Delp, Huntington, WV, for plaintiff.

R. Carter Elkins, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, WV, for defendants.

## *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending in this closed case is a dispute among Betty Ann Jenkins, her court-appointed lawyer, W. Robert Hamlin, and strangers to this litigation. The dispute involves a portion of Plaintiff's recovery claimed and retained by Mr. Hamlin's employer, the law firm of Wood Grimm & Delp.[1] To resolve the issue the Court held an evidentiary and took testimony from the Plaintiff, her counsel Mr. Hamlin and Bert M. Grimm, Jr., a partner of Wood Grimm & Delp.

For the reasons that follow, the Court concludes a putative contingent fee contract executed by the Plaintiff with Attorney Hamlin is of no force and effect. The Court further **ORDERS** the $40,877.04 cash amount extracted from the Plaintiff's recovery by Mr. Hamlin under the claimed authority of the contingent fee agreement and then assigned by Hamlin to Wood Grimm & Delp be paid over to the Plaintiff by the Clerk from the Court's registry.

### I.

### FACTS

This dispute arose from litigation instituted on May 25, 1990 by the Plaintiff *pro se* pursuant to 42 U.S.C. § 1983. Plaintiff filed a civil rights complaint against several local and federal officials in West Virginia. Her core complaints centered on the assault and rape she suffered at the hands of George McCoy, a correctional officer at the Cabell County jail in Huntington, West Virginia.

When the rape occurred, Miss Jenkins was a federal pretrial detainee temporarily lodged in the local jail, an approved federal holding facility, during her transportation by the United States Marshals Service.

Shortly after the case was filed, the Court referred this case, as it does all *pro se* prisoner litigation, to a magistrate judge for further development. On October 26, 1990 the magistrate judge determined assistance by counsel would aid in the presentation of claims and be helpful to the administration of justice in the disposition of this case and accordingly appointed W. Robert Hamlin, Esquire, as counsel for Miss Jenkins.

After extensive pretrial preparation and litigation, the case proceeded to trial on July 13, 1993. Following a jury verdict for Plaintiff against defendant George McCoy for $100,000.00, Plaintiff requested the Court also award her $149,787.65 in fees and costs under 42 U.S.C. § 1988. Of that amount, $136,171.50 was claimed for attorney fees.[2]

In Plaintiff's otherwise fulsome memoranda supporting the motion for attorney fees and costs filed with the Court, no disclosure was made of the existence of a contingent fee agreement between Ms. Jenkins and her court-appointed counsel. However, within an attachment to the motion detailing Mr. Hamlin's time expenditure, a notation suggested such an agreement had been drafted.[3] In their response to the motion for attorney's fees, defendants questioned the notation in the attachment. Defendants suggested that if a contingent fee arrangement existed, they were unaware of its terms. Mr. Hamlin did not reply to defendants' query and made no further disclosure to defendants or the Court of the existence of the fee agreement he had with the Plaintiff.

1. Mr. Hamlin is no longer associated with Wood Grimm & Delp, although he currently shares office space with the firm and the firm appeared for and with him in this litigation over fees and costs.

2. In terms of time expended, over one thousand five hundred (1500) hours of attorney time was asserted, as well as over two hundred twenty (220) hours for paralegal services.

3. The only mention of the possible existence of a contingent fee arrangement is a single brief note found within a "daily entry" on page eleven (11) of the forty-four (44) page attachment to the motion. The entry states on March 11, 1992, Mr. Hamlin performed "[p]reparation of the fee agreement letter revised from 10–31–91 and fee agreement *if no civil rights award is made;* case planning re depositions and interrogatories (WRH) 3.9 hrs." (emphasis supplied). At most, this indicates an agreement was drafted, not that one was executed between Mr. Hamlin and the Plaintiff.

Lacking knowledge of the fee agreement, the Court entered a Memorandum Opinion and Order on December 23, 1993, granting, in part, the motion for attorney's fees and costs, and awarding Plaintiff $79,185.27 in fees and costs. Although Mr. Hamlin testified at the recent evidentiary hearing he was disappointed with the amount of attorney fees and costs awarded, after discussing the potential success of an appeal of the Court's fee award with his employers at Wood Grimm & Delp, he decided against an appeal. Hamlin also never discussed potential appeal of the fee award with the Plaintiff.[4]

Defendant McCoy did appeal of the jury award, which was affirmed.[5] By Satisfaction Order entered October 27, 1994, this Court concluded the jury award and attorney fees and costs had been fully satisfied.[6]

Almost one year after granting fees and costs to the Plaintiff, the Court first became aware Mr. Hamlin and his employing law firm, Wood Grimm & Delp, had induced Ms. Jenkins to part with more than forty per cent (40%) of her jury award. The Court received a letter from Plaintiff on November 22, 1994 disclosing the existence of the contingency agreement and setting forth her complaint concerning the propriety of Mr. Hamlin's attempt to enforce a contingency agreement despite the Court's prior award of fees and costs. The letter detailed Ms. Jenkins attempts to obtain from Mr. Hamlin the check representing her jury award. She met with Mr. Hamlin in his office at Wood Grimm & Delp on November 1, 1994, and he "beg[a]n expounding on how the partners were not satisfied with the money [the Court] awarded the firm ... how the firm had lost a considerable amount of money prosecuting [the]

case ... how much time was spent preparing for it, and that [Plaintiff] was responsible for certain reimbursements." Letter at 1. Plaintiff testified Mr. Hamlin's explanations sounded legitimate, so she endorsed to him her check from the defendants, totalling $104,363.65. In return, Hamlin gave her two checks totaling $63,486.61.

In response to Ms. Jenkins' letter, and a subsequent motion filed by Mr. Hamlin and Wood Grimm & Delp, the Court scheduled the evidentiary hearing. In that proceeding the Court learned that approximately eighteen (18) months after accepting appointment as counsel for the Plaintiff, Mr. Hamlin executed and forwarded a contingent fee agreement to the Plaintiff for her signature. At that time, Plaintiff remained incarcerated at a halfway-house. The agreement, dated April 7, 1992, was signed by the Plaintiff and returned to Mr. Hamlin. The agreement provides Mr. Hamlin would be entitled to one-third of any damages recovered by the Plaintiff if there was no appeal, and entitled to an additional ten percent if any party appealed. Mr. Hamlin's contingent fee entitlement was to be in excess of any attorney fees potentially awardable as sanctions against opposing parties.[7] The fee agreement did not refer to Wood Grimm & Delp or disclose Mr. Hamlin's relationship with that firm.

Mr. Hamlin confirmed in testimony he had met with the Plaintiff and requested she sign over her jury award to him and Wood Grimm & Delp. He admitted he and the firm retained approximately forty percent (40%) of the Plaintiff's jury award, a total of $40,877.04. When that amount was added to the amount of fees and costs previously awarded

---

**4.** In their brief filed with the Court of Appeals contesting the jury award, the defendants discussed the Court's award of fees and costs. Appeal Brief at 6, n. 3. Plaintiff's counsel failed to address the award of fees and costs in his response, and did not inform the Court of Appeals of the contingent agreement.

**5.** *Jenkins v. McCoy*, 35 F.3d 556 (Table), 1994 WL 501983 (4th Cir.1994).

**6.** In satisfaction of the statutory award of attorney fees and costs, the defendants forwarded a check to Mr. Hamlin. The check inappropriately

was made payable to W. Robert Hamlin of Wood Grimm & Delp. Mr. Hamlin endorsed the check to Wood Grimm & Delp immediately upon receipt.

**7.** The contingent fee arrangement states:

"If the Attorney seeks an award of attorney fees and costs as sanctions against a party litigant, and if such attorney fees and costs are awarded to the Attorney, any such award shall be in addition to and not in lieu of the attorney's fees and costs provided for hereinabove, and shall be paid to Attorney in addition to other fees herein provided."

by the Court, Mr. Hamlin and Wood Grimm & Delp thus received $122,372.16, a far greater bounty from the lawsuit than did Hamlin's client. Ms. Jenkins, the victim of the constitutional tort, was left with $63,486.61.

At the hearing, Mr. Hamlin admitted he had not disclosed the existence of the contingency arrangement to the Court or to the defendants. Bert M. Grimm, Jr., a partner in Wood Grimm & Delp, testified the firm believed the contingent fee contract was not "any of [defendants'] business." Transcript, p. 24. Both Mr. Hamlin and Mr. Grimm testified they believed the firm of Wood Grimm & Delp were appointed to represent and thereafter retained by Plaintiff as counsel in the instant matter. Neither could point to any language of the Appointment Order or of the contingency agreement to support that claim.

At the conclusion of the evidentiary hearing, the Court ordered Wood Grimm & Delp to deposit the $40,877.04 retained from Plaintiff's jury award in the Court's registry pending resolution of the contingency fee issue. Mr. Hamlin and Wood Grimm & Delp filed a memorandum on December 28, 1994 in support of their position they were entitled to this portion of Plaintiff's jury award because of the terms of the undisclosed fee agreement.

## II.

### APPLICABLE LAW

■ Courts have inherent powers to supervise the collection of attorney fees and monitor contingent fee agreements. *In re Agent Orange Product Liability Litigation,* 818 F.2d 226, 240 (2nd Cir.1987) ("It is well established that a district court, pursuant to its rulemaking authority or on an *ad hoc* basis, may review a contingency fee agreement."); *Novinger v. E.I. DuPont de Nemours & Co., Inc.,* 809 F.2d 212, 217 (3rd Cir.), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Rosquist v. Soo Line*

*R.R.,* 692 F.2d 1107, 1111 (7th Cir.1982) ("The district court's appraisal of the amount of the fee is ... justified by the court's inherent right to supervise members of its bar."); *International Travel Arrangers, Inc. v. Western Airlines, Inc.,* 623 F.2d 1255, 1277 (8th Cir.), *cert. denied,* 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980) ("The court has the power and the responsibility to monitor contingency fee agreements for reasonableness."); *Allen v. United States,* 606 F.2d 432, 435 (4th Cir.1979) ("The district courts' supervisory jurisdiction over contingent fee contracts for services rendered in cases before them is well-established."); *Dunn v. H.K. Porter Co.,* 602 F.2d 1105, 1108 (3rd Cir.1979) ("[C]ourts have the power to monitor [contingency fee] agreements either through rule-making or on an *ad hoc* basis."); *Schlesinger v. Teitelbaum,* 475 F.2d 137, 141 (3rd Cir.), *cert. denied,* 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973) ("The district courts' supervisory jurisdiction over contingent fee contracts for services rendered in cases before them is well-established."); *Cappel v. Adams,* 434 F.2d 1278 (5th Cir.1970); *Farmington Dowel Products Co. v. Forster Mfg. Co.,* 436 F.2d 699, 701 (1st Cir.1970). *See also Jackson v. United States,* 881 F.2d 707, 710 (9th Cir.1989) ("[A]ll courts possess an inherent power to prevent unprofessional conduct by those attorneys who are practicing before them. This authority extends to any unprofessional conduct, including conduct that involves the exaction of illegal fees." (footnote omitted)); *Hoffert v. General Motors Corp.,* 656 F.2d 161, 165 (5th Cir., Unit A 1981), *cert. denied sub nom., Cochrane & Bresnahan v. Smith,* 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982).

■ When a party to a lawsuit challenges the fee assessed by the party's lawyer, the burden is on the lawyer to show the fee is reasonable. This is true whether it is the party or the lawyer who brings the fee dispute before the court.[8] *McKenzie Const.,*

---

8. Courts have the power to review contingent fee agreements *sua sponte* when necessary. *Rosquist v. Soo Line R.R.,* 692 F.2d at 1111 ("Even when the validity of the fee contract itself has not been challenged by the parties, it is within the

court's inherent power of supervision over the bar to examine the attorney's fee for conformance with the reasonable standard of the Code of Ethics."), *citing Elder v. Metropolitan Freight Carriers, Inc.,* 543 F.2d 513, 518 (3rd Cir.1976),

*Inc. v. Maynard*, 758 F.2d 97, 100 (3rd Cir. 1985) ("The allocation of the burden of proof is premised on the relationship of trust owed by a lawyer to his client, with a concomitant obligation to charge only a reasonable fee whether the arrangement be contingent or otherwise. This approach is at the very heart of the special relationship between attorney and client."); *Dunn v. H.K. Porter Co., Inc.*, 602 F.2d at 1113. The Court therefore must determine whether the contingent fee agreement between the Plaintiff and Mr. Hamlin is valid under the circumstances of this case.

Hamlin and Wood Grimm & Delp argue the contingent fee agreement is valid, despite the court award of attorney fees, based upon *Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). *Venegas* contained a situation facially similar to the instant case. The plaintiff there sought to deny his trial counsel the one-third contingency fee previously agreed upon by the parties. The trial court had awarded attorney fees and costs to the plaintiff pursuant to 42 U.S.C. § 1988 and plaintiff argued the contingency agreement was invalidated by the recovery of fees and costs under the statute because the contingency contract called for a fee in excess of the statutory award. The Court rejected the plaintiff's argument:

> "The aim of [§ 1988] is to enable civil rights plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail. It is likely that in many, if not most, cases a lawyer will undertake a civil rights case on the express or implied promise of the plaintiff to pay the lawyer the statutory award, *i.e.*, a reasonable fee, if the case is won. But there is nothing in the section to regulate what plaintiffs may or may not promise to pay their attorneys if they lose or if they win. Certainly,

§ 1988 does not on its face prevent the plaintiff from promising an attorney a percentage of any money judgment that may be recovered." *Id.*, 495 U.S. at 86–87, 110 S.Ct. at 1682, 109 L.Ed.2d at 82.

Thus, the Supreme Court concluded:

> "[Section] 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order. Section 1988 itself does not interfere with the enforceability of a contingent-fee contract." *Id.*, 495 U.S. at 90, 110 S.Ct. at 1684, 109 L.Ed.2d at 84.

■ It is clear the mere award of attorney fees under § 1988 does not invalidate a contingent fee agreement. *Id.* However, *Venegas* is not dispositive of the instant dispute because it is distinguishable in several major and important respects. In *Venegas* the parties agreed to the contingent arrangement *prior* to the lawyer rendering any services to the plaintiff. Here, a contingent contract was never discussed, advanced or agreed upon until eighteen months *after* Counselor Hamlin was appointed and well after he began rendering services to Ms. Jenkins. Moreover, in this case the existence of the contingent contract was not disclosed to the Court at any time during the litigation regarding the statutory award under § 1988 as implicitly required by the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67, 75 (1989). As described more fully below, the foregoing factors clearly distinguish the instant dispute from *Venegas*.[9]

*Farmington Dowel Products Co. v. Forster Mfg. Co.*, 421 F.2d 61, 90–91 (1st Cir.1970), and *Cappel v. Adams*, 434 F.2d at 1280. For the reasons stated in the text, the burden is upon the lawyer to show the reasonableness of the fee even where the court reviews a contingent fee agreement *sua sponte*.

**9.** In *Venegas*, the contingent agreement "provided that any fee awarded by the court would be applied, dollar for dollar, to offset the contingent

fee." *Id.*, 495 U.S. at 84, 110 S.Ct. at 1681, 109 L.Ed.2d at 80. In the instant case, the contingent fee is not explicitly an offset, but was to be in addition to attorney fees and costs levied as a *sanction* against a party litigant. The language employed in the assailed agreement is ambiguous at best (and actually silent) on the issue of whether it would be offset by or in addition to the court awardable fee under 42 U.S.C. § 1988.

## A.

## TIMING OF THE CONTINGENT FEE AGREEMENT

The timing of the execution of a contingent fee agreement is an important consideration in this fee dispute. Traditionally, courts have been vigilant in reviewing fee agreements entered into long after the attorney-client relationship commenced. The law recognizes the parties cease to bargain at arms length once the bonds of the attorney-client relationship are established sufficiently. Thereafter, the lawyer is elevated to a significantly greater position of trust with regard to the client. As stated in the seminal case of *Spilker v. Hankin*, 188 F.2d 35, 39 (D.C.Cir.1951):

"Fee contracts between attorney and client are a subject of special interest and concern to the courts. They are not to be enforced upon the same basis as ordinary commercial contracts. Especially is this true where ... a contract beneficial to the attorney is executed long after the attorney client relationship has commenced, when the position of trust is well established, and the litigation involved is reaching its culmination."

*See Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 896 (1st Cir.1985) ("Contingent fees are, of course, of special concern to courts and are subject to strict judicial supervision."); *McKenzie Const., Inc. v. Maynard*, 758 F.2d at 101; *Krause v. Rhodes*, 640 F.2d 214, 220 (6th Cir.), *cert. denied sub nom., Sindell, Lowe & Guidubaldi v. Attorney Gen. of Ohio*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Hoffert v. General Motors Corp.*, 656 F.2d at 165; *Allen v. United States*, 606 F.2d at 435, *citing Dunn v. H.K. Porter Co., Inc.*, 602 F.2d at 1108, *Garrett v. McRee*, 201 F.2d 250, 253 (10th Cir.1953), and *In re Crouse*, 273 F.Supp. 642, 645 (S.D.W.Va.

1965), *aff'd*, 383 F.2d 405 (4th Cir.1967), *cert. denied*, 389 U.S. 1036, 88 S.Ct. 769, 19 L.Ed.2d 824 (1968); *Pete v. United Mine Workers of Am. Welfare and Retirement Fund of 1950*, 517 F.2d 1275, 1291 (D.C.Cir. 1975); *Schlesinger v. Teitelbaum*, 475 F.2d at 140; *Cappel v. Adams, supra; Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61, 73 (S.D.Tex.1977). *See generally, F.S. & P. Coal Co. v. Inter–Mountain Coals, Inc.*, 179 W.Va. 190, 366 S.E.2d 638 (1988). As stated in *Cooper v. Singer*, 719 F.2d 1496, 1505 (10th Cir.1983):

"Courts can open their doors to the public, but they must rely on lawyers to guide the litigant through the passageways. In entrusting the litigant to the legal profession, courts recognize the possibility that a self-serving lawyer may ignore the best interests of the courts and his clients. Attentive to the demands of the public interest, courts retain supervisory power over the attorney-client relationship. Fees are central to that relationship, and contingent fee arrangements are therefore subject to the courts' supervision."

 Simply because a client acquiesced in or signed a contingent fee agreement does not necessarily validate the contract. A court must not blindly defer to the contract. *Ramos Colon v. Secretary of Health & Human Services*, 850 F.2d 24, 26 (1st Cir.1988); *Kimball v. Shalala*, 826 F.Supp. 573, 578 (D.Me.1993); *Kaufman v. Diversified Industries, Inc.*, 356 F.Supp. 827, 830 (S.D.N.Y. 1973) ("[T]he court is not bound by any contingent fee executed between plaintiff and his attorneys."); *accord, Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 779 F.2d 1450, 1455 (10th Cir.1985). When courts invoke their inherent powers to scrutinize contingent fee contracts entered into by lawyers practicing before them, the contingent fee contract is reviewed under a reasonableness standard.[10] *McKenzie Const., Inc. v. May-*

10. Because contingent fee contracts are not reviewed under the more exacting standards applied to commercial contracts, *Spilker v. Hankin, supra*, there is no necessity to review the instant agreement for unconscionability. Nonetheless, the Court could well conclude under applicable West Virginia contractual law and the facts specific to this case, that the contingent fee agreement is unconscionable, void *ab initio* and unenforceable. *See e.g., Syllabus* Point 4, *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co. of W.Va., Inc.*, 186 W.Va. 613, 413 S.E.2d 670 (1991) ("A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plain-

*nard,* 758 F.2d at 100; *International Travel Arrangers, Inc. v. Western Airlines, Inc.,* 623 F.2d at 1277–78; *Allen v. United States,* 606 F.2d at 435; *Dunn v. H.K. Porter Co., Inc.,* 602 F.2d at 1108; *Schlesinger v. Teitelbaum,* 475 F.2d at 141; *Fitzgerald v. Freeman,* 409 F.2d 427 (7th Cir.), *cert. denied,* 396 U.S. 875, 90 S.Ct. 151, 24 L.Ed.2d 134, *reh'g denied,* 396 U.S. 976, 90 S.Ct. 425, 24 L.Ed.2d 447 (1969); *McGill v. City of Ottawa,* 773 F.Supp. 1473, 1474–75 (D.Kan.1991).

■ Because courts exercise this inherent power over contingent arrangements sparingly and in exceptional circumstances only, the contingent fee agreement must cross the "outer limit of reasonableness" to void the agreement. *Farmington Dowel Products Co. v. Forster Mfg. Co. Inc.,* 421 F.2d at 90.

■ Determination of whether a contingent fee contract is reasonable is not limited to an interpretation of the agreement itself. *Dunn v. H.K. Porter Co., Inc.,* 602 F.2d at 1110; *McGill v. City of Ottawa,* 773 F.Supp. at 1474–75. The court must consider the circumstances surrounding both the negotiation and the performance of the contingency fee contract. *Dunn v. H.K. Porter Co., Inc.,* 602 F.2d at 1110; *McGill v. City of Ottawa,* 773 F.Supp. at 1474–75. Included in the court's consideration of the contingent agreement's reasonableness is (1) the manner in which the contract was entered; (2) the status and sophistication of the plaintiff; (3) whether the source of the payment is a settlement fund or a tax against the defendants; (4) the size of the proposed award;

and, (5) whether the fee allowed is sufficient to encourage capable counsel to undertake similar litigation in the future.[11] *Dunn v. H.K. Porter Co.,* 602 F.2d at 1110; *accord, International Travel Arrangers, Inc. v. Western Airlines, Inc.,* 623 F.2d at 1277–78. *See generally, Annot., Validity and Effect of Contract for Attorney's Compensation Made After Inception of Attorney–Client Relationship,* 13 A.L.R.3d 701 (1967 & Supp.1994).

The timing of the instant contingent fee agreement has been of continuing concern to the Court. Lawyer Hamlin represented Plaintiff for eighteen (18) months prior to any discussion with her of a contingent fee contract. By his silence he encouraged Plaintiff, who has a seventh grade education only, *see* Transcript, p. 73, to trust him to the extent that when he telephoned her at the halfway house where she was incarcerated and requested she sign the agreement, she treated it as any other legal document for which he requested her signature, perfunctorily signed and returned it to him. *See* Transcript, p. 49–50.

Both Hamlin and Grimm attempted to explain the rationale for the contingent agreement in their testimony. They testified they became aware only gradually that there was a possibility Hamlin might be successful in settling plaintiff's claims, but believed they could not recover fees and costs because they did not have a fee contract with the Plaintiff. This testimony appears, at the very least, disingenuous. Clear precedent from the

tiff, and 'the existence of unfair terms in the contract.' "); *Syllabus* Point 2, in part, *Orlando v. Finance One of W.Va., Inc.,* 179 W.Va. 447, 369 S.E.2d 882 (1988) (" '[T]he particular facts involved in each case are of utmost importance since certain conduct, contracts or contractual provisions may be unconscionable in some situations but not in others.' "); *Syllabus* Points 1 and 3, *Troy Min. Corp. v. Itmann Coal Co.,* 176 W.Va. 599, 346 S.E.2d 749 (1986) ("Unconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court." "An analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole."); *McGinnis v. Cayton,* 173 W.Va. 102, 312 S.E.2d 765 (1984) (Harshbarger, J., concurring); *Syllabus* Point 2, *McMellon v. Adkins,* 171

W.Va. 475, 300 S.E.2d 116 (1983) ("Unless a provision in a contract is contrary to public policy, it is subject to challenge for unconscionability only in light of the facts and circumstances particular to the contract.").

11. *See also, McGill v. City of Ottawa,* 773 F.Supp. at 1475 n. 3 ("Some courts have held that a fee agreement modified to increase an attorney's compensation after the attorney is employed is unenforceable if it is not supported by new consideration. *See e.g., Perez v. Pappas,* 98 Wash.2d 835, 841, 659 P.2d 475 (1983). Further, in determining enforceability, attorneys must establish no undue advantage was taken of the client, that the client was fully informed and that the modification was fair. *See Rabin v. Faim Information Serv., Inc.,* 333 N.Y.S.2d 561, 70 Misc.2d 346 (1972).").

United States Supreme Court permits, and permitted at the time the contingent fee agreement was executed, recovery of attorney fees and costs under § 1988 in cases that settle favorable to the claimant prior to trial, or prior to any court action at all.[12] *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653, 661 (1980) ("The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim for fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation or on a judicial determination that the plaintiff's rights have been violated.").

 Moreover, Hamlin and Wood Grimm & Delp implied Hamlin would have sought to be relieved as Plaintiff's counsel if she did not agree to the contingent fee because they could not afford the burden of the costs of the case if she did not so agree. This would not have been a valid reason for Hamlin to seek withdrawal as Plaintiff's counsel, however. An attorney who accepts an appointment to represent an indigent plaintiff is expected to bear the litigation costs of the plaintiff. As one court has stated:

> "[where] an attorney is appointed to represent a plaintiff proceeding *in forma pauperis,* the attorney is expected to bear the costs of litigation[.] After completion of the litigation however, an attorney who represents the prevailing party may be reimbursed for litigation costs and be awarded reasonable attorney's fees under 42 U.S.C. § 1988." *Gomez v. Myers,* 627 F.Supp. 183, 186 n. 5 (E.D.Tex.1985), *citing Moss v. ITT Continental Baking Co.,* 83 F.R.D. 624 (E.D.Va.1979).

*See also Waters v. Kemp,* 845 F.2d 260, 263 (11th Cir.1988) ("[A]n attorney must represent an indigent client as professionally and zealously as he represents a paying client.").

The Court has considered carefully the factors outlined above and concludes the

manner in which the contingent fee agreement was executed makes it unreasonable. Through his eighteen months of representation Attorney Hamlin first earned Plaintiff's trust, then, knowing her to be of little sophistication and knowing of her vulnerability while she was serving a sentence of incarceration, he abused Ms. Jenkins' trust and induced her to approve the contingent fee agreement. He also took undue advantage of his client's trust knowing she had suffered the trauma of rape while incarcerated. Hamlin's conduct is particularly egregious considering he knew or should have known an action for fees under § 1988 would be available if he successfully prosecuted or settled her claims. There appears no good reason why Plaintiff should agree to the contingency arrangement if she had been fully apprised of her legal rights by her lawyer. Reasonable fees would be permissible if she prevailed or settled; any representation by Hamlin that he would be forced to withdraw, and that the Court would permit such a withdrawal, was clearly inappropriate and wrong.[13]

The Court concludes the contingent fee agreement was unreasonable, unconscionable and it will not be honored.

The Court also is seriously concerned about the lawyer's failure to disclose the existence of the contingent fee agreement during the litigation of the § 1988 attorney fee claim, and concludes the failure to reveal the fee arrangement to the Court and defendants, as discussed below, provides an added justification for invalidating it.

### B.

### DISCLOSURE OF THE CONTINGENT FEE AGREEMENT

 Beyond the specific duties imposed by law, members of the bar, as officers of the courts in which they practice, are held

---

12. Although the Court recognizes an award of attorney's fees and costs under § 1988 is permissive only, and not mandatory; nonetheless, it likely would be an abuse of the court's discretion if a request by the prevailing party for reasonable attorney fees under the statute was denied.

13. None of the other factors enunciated in *Dunn v. H.K. Porter Co., Inc., supra,* support Hamlin and Wood Grimm & Delp's contentions. The unappealed award of fees under § 1988 was, as the Court previously held, reasonable; thus, such an award would not discourage lawyers from undertaking similar representations in the future.

to a general duty of candor and truthfulness. *United States v. Shaffer Equipment Co.,* 11 F.3d 450, 458 (4th Cir.1993). This ethical duty "takes its shape from the larger object of preserving the integrity of the judicial system." *Id.* Incident to this general duty of candor is a lawyer's " ' "duty to inform the Court of any development which may conceivably affect the outcome" of the litigation.' " *Id., citing Board of License Commissioners of Town of Tiverton v. Pastore,* 469 U.S. 238, 240, 105 S.Ct. 685, 686, 83 L.Ed.2d 618 (1985), *quoting Fusari v. Steinberg,* 419 U.S. 379, 391, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975) (Burger, C.J. concurring) (emphasis deleted). This duty sometimes comes into conflict with a lawyer's duty of zealous representation and confidentiality to his client. Nonetheless, even when such a conflict arises, it is the duty of candor and honesty which must prevail. *Id.*

 It is evident that where a lawyer is asserting rights on behalf of his client, here, a right to attorney fees under § 1988,[14] a matter in which the lawyer has a significant personal interest, the duty of candor and honesty should not be inhibited in any manner by a conflict with his duties to represent his client vigorously or to protect the client's secrets. To the contrary, where the lawyer has a heightened personal interest in the outcome of litigation, as he does in pure fee litigation, greater, not lesser candor, is to be expected of counsel. Although the right to pursue the fee belongs to the client, the public perception is that the lawyer has a vested interest in the fee, so maintenance of the integrity of the judicial system demands a greater level of candor from the lawyer. "The [judicial] system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end." *United States v. Shaffer Equipment Co.,* 11 F.3d at 457–58.

Hamlin admits he did not inform the Court or defendants of the existence of the contingent fee agreement. One of Hamlin's employers, Lawyer Grimm, opined the agreement was none of defendants' business, and implied it was none of the Court's business to

know. The Court strenuously disagrees. This Circuit has adopted the twelve-part test outlined in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) for use in determining reasonable attorney fees under § 1988. *See Hensley v. Eckerhart,* 461 U.S. 424, 429–431, 103 S.Ct. 1933, 1938, 76 L.Ed.2d 40 (1983); *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir.1994); *Daly v. Hill,* 790 F.2d 1071, 1077 (4th Cir.1986); *Anderson v. Morris,* 658 F.2d 246 (4th Cir.1981). One of the factors to be considered under *Johnson* is the existence of a fixed or contingent fee. In *Blanchard v. Bergeron,* 489 U.S. at 93, 109 S.Ct. at 944, 103 L.Ed.2d at 75, the Supreme Court addressed whether the foregoing factor may be *determinative* of the fee, and rejected that contention. *Accord Goodwin v. Metts,* 973 F.2d 378, 386 (4th Cir.1992).

 Nonetheless, implicit in the discussion of whether the existence of a contingency agreement may be determinative is the fact that the Court must have access to all relevant information to apply all of the *Johnson* factors, because each is important to the analysis. And although not *determinative* of the statutory award of fees, the existence or non-existence of a fee contract is a necessary component of the analysis. Certainly disclosure of a fee agreement is not the responsibility of defense counsel; only plaintiff's counsel is privy to that information initially. The Court holds Plaintiff's counsel has a legal, as well as an ethical, duty to reveal a fee agreement so that the Court may consider the agreement as part and parcel of the *Johnson* test.

Based on the foregoing, it is clear the Court believes Hamlin was duty-bound and more in his obligation to disclose the fee agreement. What makes his conduct particularly outrageous, however, is his failure to disclose the agreement after the defendants raised this issue in their response brief to the motion for attorney fees. Hamlin deceptively ignored the issue and declined to inform either the Court or defense counsel of the existence of the contingent agreement. The Court concludes the duty to disclose is and

14. *See Evans v. Jeff D.,* 475 U.S. 717, 730, 106 S.Ct. 1531, 1539, 89 L.Ed.2d 747 (1986).

was abundantly clear from the caselaw and finds Hamlin's conduct in this regard deceptive. This fact alone is sufficient to void the contingent fee contract. *Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1024 (7th Cir. 1991), *cert. denied sub nom., Cook v. Alexander*, 503 U.S. 905, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992) (failure to inform court of fee agreement and intent to enforce same, where court is required to scrutinize any such agreement, rendered fee contract unenforceable).

## C.

### STRANGERS TO THE LITIGATION

▇ Both Hamlin and Wood Grimm & Delp have asserted their belief Wood Grimm & Delp is the proper recipient of the statutory award of attorney fees under § 1988 and of any fees available pursuant to the contingent agreement. The Court recognizes Hamlin was an employee of Wood Grimm & Delp at the pertinent times and that he utilized the firm's resources while representing the Plaintiff. Only Hamlin was appointed to represent the Plaintiff, however. Ms. Jenkins did not hire the law firm to represent her and the Court certainly did not appoint the law firm to represent her. Further, the contingent agreement when forwarded to her and when she signed it, contained no mention of Wood Grimm & Delp.

For Wood Grimm & Delp now to assert that it had a contractual attorney-client relationship with the Plaintiff because it aided and employed Hamlin in his representation is specious. Although the firm was bound by the rules of professional responsibility when it agreed to aid Hamlin's representation, its contractual relationship was with Hamlin only, and not the Plaintiff. If Hamlin chose to relinquish his legitimate fee award to Wood Grimm & Delp, that is of no moment to this dispute. The sole lawyer who was appointed to and who later contracted to represent Plaintiff was Hamlin. Wood Grimm & Delp has no right to interject itself into the fee award or the instant dispute.[15]

## III.

### CONCLUSION

The Court emphasizes it exercises its inherent powers over attorney fee agreements reluctantly. Such matters are, in all but rare instances, left to the parties. *See McKenzie Const., Inc. v. Maynard*, 758 F.2d at 102 ("[C]ourts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties."); *Rosquist v. Soo Line Railroad*, 692 F.2d at 1110 ("In ordinary circumstances, trial courts may have no reason to inquire into the terms of the attorney-client contract."); *Dunn v. H.K. Porter Co., Inc.*, 602 F.2d at 1111–12. However, the Court must be mindful of its duties to oversee lawyers, who are its officers after all. When lawyers seek to take unfair advantage of unsophisticated clients and then conceal such shenanigans from the Court, all in an effort to gain financially at a client's expense, the Court vigorously must protect the integrity of the system of civil justice by utilizing its inherent oversight authority.

Lawyers perform an important societal function, acting as advocates for those unschooled in the law. Among the most noble and admired services a lawyer can provide is representation to an indigent. Such representation deserves reasonable compensation and Congress has given its encouragement by enacting § 1988 and similar fee provending statutes. Mr. Hamlin is to be commended for agreeing to appointment as counsel for the Plaintiff and his success in this case has been and is applauded by the Court. He was entitled to reasonable fees under § 1988. But by violating the trust of both the Plaintiff and this Court he unfortunately tarnishes the profession as a whole, encouraging the conventional wisdom that lawyers are greedy

---

15. The Court notes it is a common law offense for one to meddle in a suit where the meddler has no interest. *See generally*, 14 Am.Jur.2d *Champerty and Maintenance* p. 841, *et seq.* Normally, an exception is made to these offenses when the meddling is in aid of an indigent client. It is unclear, however, how the law of maintenance or champerty would treat such meddling in the context of 42 U.S.C. § 1988 where reasonable attorney fees are available for the prevailing party and where, as here, the meddling puts the lawyers' interest in conflict with and above that of the client.

and self-serving. By interjecting itself into the instant fee dispute the conduct of Wood Grimm & Delp is likewise deplorable. The Court cannot countenance the inglorious events that clouded an otherwise excellent vindication of an indigent's constitutional rights.

The Court thus concludes the contingent fee agreement executed between the Plaintiff and Mr. Hamlin to be unenforceable and void. Because the contingent fee amount sought by Mr. Hamlin and Wood Grimm & Delp rightly belongs to the Plaintiff, the Court **ORDERS** the $40,877.04 placed by Mr. Hamlin and Wood Grimm & Delp in the Court's registry by prior order now returned to the Plaintiff.

The Clerk is DIRECTED to send a copy of this Order to counsel of record and to CLOSE the case again.