637 S.E.2d 359

**Holly D. HELDRETH, Plaintiff Below, Appellant**

v.

**Dr. Ali A. RAHIMIAN and Regional Women's Health Care, Inc., Defendants Below, Appellees.**

No. 32779.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 2006.

Decided Feb. 21, 2006.

Concurring Opinion of Justice Davis Feb. 22, 2006.

Concurring and Dissenting Opinion of Justice Maynard June 22, 2006.

Concurring Opinion of Justice Benjamin July 27, 2006.

$8,617.[2] In justification of this fee reduction, the trial court explained that the fees submitted were not capable of being readily divided based on the differing theories originally advanced by Ms. Heldreth and accordingly required an across-the-board eighty percent deduction because Appellant succeeded on only one of her five original theories of recovery.[3] Upon our review of this issue, we conclude that the trial court committed error by arriving at the award of attorney's fees through application of a straight percentage formula of reduction. Accordingly, we reverse and remand to permit the trial court to make an award of reasonable attorney's fees by applying factors appropriate for calculation of a reasonable fee award. In addition, on remand the lower court should consider the additional guidance offered by this Court with regard to making a statutory fee award where the complainant and her counsel have previously entered into a contingency fee agreement.

## I. Factual and Procedural Background

Appellant was a receptionist in the Clarksburg, West Virginia, medical office of Appellee Dr. Ali A. Rahimian from August 2000 until she left his employ on December 5, 2001. Dr. Rahimian was also Appellant's gynecologist. In the complaint, Ms. Heldreth alleged that she was forced to quit as a result of sexual harassment and a sexual assault. The alleged assault occurred in connection with the administration by Dr. Rahimian of a Depo–Provera injection.

Appellant asserted five separate causes of action against Dr. Rahimian through a lawsuit filed in state court. She alleged sexual harassment under the West Virginia Human Rights Act based on a hostile work environment;[4] quid pro quo sexual harassment;[5]

Drew M. Capuder, Law Office of Drew M. Capuder, Fairmont, for the Appellant.

Jerald E. Jones, Perry B. Jones, West & Jones, Clarksburg, for the Appellee.

ALBRIGHT, Justice:

Appellant Holly D. Heldreth appeals from the November 16, 2004, order of the Circuit Court of Harrison County through which the trial court made a reduced award of attorney's fees that are statutorily authorized[1] in connection with a successful result in a sexual harassment action. Upon its review and hearing of Appellant's counsel's motion for cumulative attorney's fees in the amount of $43,085, the trial court awarded twenty percent of the fees requested for the amount of

---

1. *See* West Virginia Code § 5–11–13(c) (1998) (Repl.Vol.2002) (authorizing award of attorney's fees and expenses to complainant for successful human rights action).

2. The trial court approved the full amount of expenses submitted by Appellant: $3,238.87.

3. Appellant's counsel proceeded to trial on only two of the five original theories of recovery: hostile work environment sexual harassment and quid pro quo sexual harassment. The jury came back with a verdict for Appellant on the hostile

---

work environment claim, but denied recovery on the quid pro quo claim.

4. *See* W.Va.Code § 5–11–1 to—21 (Repl.Vol. 2002).

5. We have previously distinguished the two forms of recoverable sexual harassment:

There are two recognized forms of sexual harassment in the workplace. The first form of sexual harassment involves an employee who is consistently subjected to sexual innuen-

intentional infliction of emotional distress; assault and battery; and wrongful discharge in violation of public policy.[6] At trial, Appellant's counsel made a strategy determination to proceed to the jury on only two of the five original causes of action. Consequently, the jury was asked to make determinations only as to Appellant's two sexual harassment claims, one of which involved an alleged hostile work environment while the other claim centered on allegations of quid pro quo sexual harassment.

The jury found for Appellant on the sexual harassment claim predicated on hostile work environment, but against her on the quid pro quo claim of sexual harassment.[7] The jury returned damages in the amount of $5,000 for emotional distress; $6,300 for lost wages; and $1,000 in punitive damages for a total award of $12,300.

When Appellant's attorney submitted his request for attorney's fees and expenses,[8] he submitted a bill for 246.09 hours of work at a rate of $175 an hour for a total amount of $43,085. After holding a hearing on the issue of a statutory fee award, the trial court decided to apply a percentage basis and awarded Appellant's counsel 20% of his requested fees for a total amount of $8,617. In its order authorizing the award, the trial court noted that this award of statutory fees was in addition to the 40% contingency fee counsel would receive from his client pursuant to their contractual fee arrangement.

Through this appeal, Appellant seeks a reversal of the trial court's use of a straight percentage basis in making the fee award and additional reimbursement for the fees reasonably required to prosecute this appeal.

## II. Standard of Review

Our review of the issue of a trial court's award of attorney's fees is to determine whether the lower court committed error in making the award. In *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16(1959), we explained: "[T]he trial [court] ... is vested with a wide discretion in determining the amount of ... court costs and counsel fees; and the trial [court's] ... determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion." *Id.* at 478–79, 109 S.E.2d at 17, syl. pt. 3, in part. Accordingly, we proceed to determine whether the award of attorney's fees made by the trial court in this case constitutes an abuse of its discretion.

## III. DISCUSSION

Appellant argues that the methodology the trial court employed to arrive at the award of attorney's fees granted in this case was an abuse of its discretion. In making its award, the trial court opined as follows:

The hourly rate of $175 is an appropriate rate based on prevailing market rates of other similar attorneys in this area. However, the total number of hours expended (246.90 hours) should not be used, as the Plaintiff only prevailed as to one count which provided for the recovery of attorney fees. It is impossible to discern from the detailed invoice which Plaintiff's counsel has submitted how many hours were devoted to each distinct cause. Therefore, the Court will use a percentage basis. Since only one of the causes of action allowed for the recovery of attorneys' fees and the Plaintiff prevailed on that one cause of action, then 20 percent of

do or contact, thereby creating a hostile environment for employment. The second form of sexual harassment involves an employer or agent of the employer demanding sexual consideration in exchange for job benefits, so-called 'quid pro quo' harassment. For either type of sexual harassment to be actionable, the harassment must be sufficiently severe or pervasive. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66–67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49, 59–60 (1986).
*Gino's Pizza v. W. Va. Human Rights Comm'n*, 187 W.Va. 312, 315 n. 7, 418 S.E.2d 758, 761 n. 7 (1992) (citing *Westmoreland Coal Co. v. W. Va.*

*Human Rights Comm'n*, 181 W.Va. 368, 371 n. 3, 382 S.E.2d 562, 565 n. 3 (1989)).

6. *See Harless v. First Nat'l Bank*, 162 W.Va. 116, 246 S.E.2d 270 (1978).

7. The jury was not presented with the theories of recovery grounded in intentional infliction of emotional distress; assault and battery; and wrongful discharge in violation of public policy.

8. *See supra* note 2.

the total attorneys' fees or the sum of $8,617.00 should be awarded to Plaintiff's counsel, in addition to the forty (40) percent of the total verdict he will receive from the Plaintiff under their contingency fee arrangement.

■ The underlying basis for an award of fees pursuant to the fee shifting statute at issue was articulated in *Bishop Coal Company v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989):

> The goal of the West Virginia human rights law is to protect the most basic, cherished rights and liberties of the citizens of West Virginia. Effective enforcement of the human rights law depends upon the action of private citizens who, from our observations of these matters, usually lack the resources to retain the legal counsel necessary to vindicate their rights. Full enforcement of the civil rights act requires adequate fee awards.

181 W.Va. at 80, 380 S.E.2d at 247. Thus, inherent in any statutory fee award made pursuant to West Virginia Code § 5–11–13(c) is a recognition that the economic incentive provided by such a fee-shifting mechanism is necessary to attract competent counsel for the purpose of enforcing civil rights laws that serve to protect the interests of this state's citizenry.

■ The calculation of attorney's fees in a human rights action requires, as this Court has previously recognized, the exclusion of hours spent on unsuccessful claims. In explaining in *Bishop Coal* that a fee reduction is warranted when a plaintiff is only partially successful in pursuing various theories of recovery, this Court stated:

> In the case before us the appellant argues that Ms. Salyers did not prevail on all counts of her complaint and therefore, the attorney's fees should be reduced to the extent that hours were devoted to issues on which Ms. Salyers did not prevail. We agree with appellant's general principle, but we find that in Ms. Salyers' case the appellant failed to refine its general argument to apply to the specific facts before us.

181 W.Va. at 82–83, 380 S.E.2d at 249–250. In explaining, however, that the hours spent preparing a case are not always capable of being categorized according to the theories pursued in developing the case, we opined:

> As we review the record, we find that the gravamen of Ms. Salyers['] complaint was that she should have been made a scoop operator and would have been promoted to that position had she not been a woman. On this issue she prevailed entirely and the other allegations of sexual harassment were simply part and parcel of her basic complaint. Often plaintiffs will have one basic problem which, in a complaint, they express in numerous alternative ways, each corresponding to a slightly different legal theory. When this occurs, as it did in the case before us, the fact that the commission or court selects one of the theories upon which to award relief does not necessarily mean that the plaintiff has not substantially prevailed. However, when a complainant sets forth distinct causes of action so that the facts supporting one are entirely different from the facts supporting another, and then fails to prevail on one or more such distinct causes of action, the appellant is correct that attorneys' fees for the unsuccessful causes of action should not be awarded. However, Ms. Salyers' third issue, namely, pattern discrimination, was an extension of her other issues and not a distinct cause of action. Further, limited effort was expended to develop additional facts beyond the facts alleged under her prevailing theory.

*Id.* at 83, 380 S.E.2d at 250 (footnote omitted).

■ What is critical in parsing out fees for unsuccessful claims, as *Bishop Coal* makes clear, is determining whether a separate and distinct factual development was required to support those alternate theories of recovery upon which recovery was not obtained. If this is the case, then those fees arising in connection with the unsuccessful claims are to be culled out. When, however, the plaintiff's counsel relies on the same factual pattern to assert different types of potential recovery, the fee sifting process becomes

more difficult. The United States Supreme Court[9] discussed the inherent difficulty presented by the need to make statutory fee awards based on the degree of the plaintiff's success in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

> [T]he plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 435, 103 S.Ct. 1933;[10] *see also Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1419 (4th Cir.1992) (remanding fee award based on district court's reduction of counsel's fee request after recognizing that the plaintiff "received a sizable verdict and that all three counts arose from a 'common core of facts'")

(citing *Hensley*, 461 U.S. 424 [435, 103 S.Ct. 1933]).

While properly recognizing the need to reduce the submitted attorney's fees based on Appellant's partial success at trial, the circuit court applied a misguided approach in making the fee reduction. In this case, the circuit court concluded that it could not identify which of the submitted time descriptions corresponded to the successful theory upon which Appellant prevailed. Rather than requesting a revised time report from Appellant's counsel with hours spent on the unsuccessful theories redacted or attempting to identify a reasonable fee based on the hours submitted, the trial court opted to apply a twenty percent multiplier to arrive at the hours that were reasonably spent on advancing Appellant's case. This methodology of calculating attorney's fees has been expressly rejected by other courts.

In *Hensley*, the United States Supreme Court "agree[d] with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.'" 461

---

9. Because there is a substantial attorney-fee jurisprudence developed in the area of fee-shifting statutes in civil rights litigation and because the rationale underlying the fee-shifting mechanism in West Virginia Code § 5–11–13(c) as well as the language providing for such recovery is the same as that provided for in the federal civil rights area, we rely upon that body of law to address the fee issues presented by this case. *See Willis v. Wal–Mart Stores, Inc.*, 202 W.Va. 413, 417, 504 S.E.2d 648, 652 (1998) (recognizing our "'longstanding practice of applying the same analytical framework used by the federal courts when deciding cases arising under the [W.Va. Human Rights] Act'" especially where "the critical language of our Act ... parallels the federal legislation"); *West Virginia Human Rights Comm'n v. Wilson Estates, Inc.*, 202 W.Va. 152, 158, 503 S.E.2d 6, 12 (1998) (observing that "[t]his Court has consistently looked to federal discrimination law dealing with Title VII of the Civil Rights Act of 1964 ... when interpreting provisions of our state's human rights statutes"); *Paxton v. Crabtree*, 184 W.Va. 237, 250 n. 26, 400 S.E.2d 245, 258 n. 26 (1990) (noting that "we have adopted federal precedent when we believed it was compatible with our human rights statute").

10. Justice Brennan, in a concurring opinion, expounded on this issue of separating those hours properly attributable to the successful result from those allotted to the unsuccessful:

> [C]ourts should recognize that reasonable counsel in a civil rights case, as in much litigation, must often advance a number of related legal claims in order to give plaintiffs the best possible chance of obtaining significant relief.... And even where two claims apparently share no "common core of facts" or related legal concepts, the actual work performed by lawyers to develop the facts of both claims may be closely intertwined. For instance, in taking a deposition of a state official, plaintiffs' counsel may find it necessary to cover a range of territory that includes both the successful and the unsuccessful claims. It is sometimes virtually impossible to determine how much time was devoted to one category or the other, and the incremental time required to pursue both claims rather than just one is likely to be small. *Hensley*, 461 U.S. at 448, 103 S.Ct. 1933 (Brennan, J., concurring) (citations omitted); *see also Abshire v. Walls*, 830 F.2d 1277, 1282–83 (4th Cir.1987) (reversing 75% fee and expense reduction in civil rights violation case upon finding that plaintiff's counsel, though unsuccessful on false arrest, false imprisonment, and malicious prosecution claims, "could not have presented the constitutional aspects of this [strip search] case without developing and presenting the facts surrounding the entire sequence of events that transpired").

U.S. at 435–36 n. 11, 103 S.Ct. 1933. As the high court commented, "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Id.* at 436 n. 11, 103 S.Ct. 1933. In an apposite decision, the Fourth Circuit Court of Appeals in *Brodziak v. Runyon,* 145 F.3d 194 (4th Cir.1998), vacated an award of attorney's fees where the district court awarded 40% of requested fees and costs based on the fact that the plaintiff prevailed on only 40% of his claims. Observing that "the *Hensley* Court explicitly rejected the notion that a court may calculate an award of attorneys' fees by means of a purely mathematical comparison between the number of claims pressed and the number prevailed upon," the appellate court in *Brodziak* found the 60% fee reduction to be in contravention of the principles announced in *Hensley.* 145 F.3d at 197.

While a trial court cannot calculate what constitutes a reasonable award of attorney's fees by utilizing a mathematical formula that compares the successful to the unsuccessful claims, as the high court announced in *Hensley,* we acknowledge that "[t]here is no precise rule or formula for making these [fee] determinations." 461 U.S. at 436, 103 S.Ct. 1933. In making a reduction based on the limited success of a plaintiff in pursuing his/her statutory claims, the United States Supreme Court offered the suggestion in *Hensley* that "the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37, 103 S.Ct. 1933. Accordingly, we hold that although a circuit court has discretion in setting an award of reasonable attorney's fees and expenses that are authorized in connection with the successful pursuit of a claim under the West Virginia Human Rights Act, the trial court is not permitted to apply a percentage reduction based on the ratio of claims pursued to claims prevailed upon when making such an award.

The calculation of reasonable fees must be made pursuant to standards which are well-established for awarding attorney's fees in cases that involve the protection of human rights. In syllabus point three of *Bishop Coal,* we held that:

When the relief sought in a human rights action is primarily equitable, "reasonable attorneys' fees" should be determined by (1) multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate—the lodestar calculation—and (2) allowing, if appropriate, a contingency enhancement. The general factors outlined in Syllabus Point 4[of] *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986) should be considered to determine: (1) the reasonableness of both time expended and hourly rate charged; and, (2) the allowance and amount of a contingency enhancement.

181 W.Va. at 72, 380 S.E.2d at 239. In this case, Appellant did not seek a contingency enhancement [11] so the issue of fee calculation is centered solely on arriving at an award based on the standards for determining a reasonable fee where a third party is required to pay under a fee-shifting mechanism, such as that presented by West Virginia Code § 5–11–13(c).

Those standards were delineated in syllabus point four of *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986):

Where attorney's fees are sought against a third party, the test of what

11. A contingency enhancement, which is also referred to as a multiplier, is sometimes "used to enhance the 'normal' hourly fee to compensate for the risk of loss." *Committee on Legal Ethics v. Triplett,* 180 W.Va. 533, 544, 378 S.E.2d 82, 93 (1988). While we recognized in *Bishop Coal* that a contingency enhancement can be used, we noted that "[t]he great weight of authority is that the lodestar calculation is the general rule in awarding attorneys' fees with occasional contingency enhancement." 181 W.Va. at 82 n. 10, 380 S.E.2d at 249 n. 10. While the issue of contingency enhancement is not before us as Appellant did not seek such an enhancement, we note that in federal courts the use of a fee enhancement mechanism in conjunction with fee-shifting statutes has been expressly rejected. *See City of Burlington v. Dague,* 505 U.S. 557, 565–66, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (holding that contingency enhancement was not permitted under applicable fee-shifting statutes and discussing how lodestar method of calculating reasonable attorney's fees is the governing standard for fee setting).

should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

176 W.Va. at 191–92, 342 S.E.2d at 157. In its order, the circuit recognized the applicability of these factors and further observed that "*Bishop* does not contemplate that every factor listed in Aetna be considered in determining the reasonableness of attorneys' fees." *Casteel v. Consolidation Coal Co.,* 181 W.Va. 501, 508, 383 S.E.2d 305, 312 (1989).

■ After concluding that the full amount of the requested fee award "should not be used, as the Plaintiff only prevailed as to one count which provided for the recovery of attorney fees," the trial court referenced the factors approved by this Court for determining a reasonable award of attorney's fees. It did not, however, make specific findings of fact with regard to these factors, other than finding that the hourly rate of $175 "is an appropriate rate based on prevailing market rates of other similar attorneys in this area."

The only other findings made by the trial court were more typical of the considerations employed when applying a contingency enhancement, which was not at issue in this case.[12]

While the trial court's findings relative to the fee award in this case amount to more than the summary conclusion of a specific fee award that this Court found deficient in *Shafer v. Kings Tire Service, Inc.,* 215 W.Va. 169, 597 S.E.2d 302 (2004), the findings made in this case do not fully comport with what is required under both *Bishop Coal* and *Pitrolo.* In *Shafer,* the trial court referenced its discretion to set attorney's fees, noted that the plaintiff's partial success warranted "some award of a portion of a attorney's fees [sic]," and then announced a seemingly arbitrary fee amount. 215 W.Va. at 178, 597 S.E.2d at 311. As we reasoned in reversing and remanding the fee award in *Shafer,* "an award of a portion of the requested fees is allowable [only] if such reduction is supported by application of the *Bishop* and *Pitrolo* factors." 215 W.Va. at 178, 597 S.E.2d at 311.

Given the trial court's improper use of a mathematical reducer in setting the award of fees and the lack of factual findings as required by this Court's decisions in *Bishop Coal* and *Pitrolo,* this matter must be reversed and remanded to permit the trial court to recalculate an award of reasonable attorney's fees. In arriving at that figure, the existence of a contingency fee agreement should not be relied upon to affect the amount of the award, as it clearly was when the trial court made its initial award of statutory fees.[13] On remand, the trial court is to

---

**12.** The trial court noted, in making its award of attorney's fees, that "Ms. Heldreth alleged a sexual assault against an established area physician in a relatively small community; there were no witnesses to the event—it was her word against his; ...." These factors are similar to the elements that courts sometime look to when increasing an award based on the contingency nature of the case and arise from the inherent risk of non-recovery in a contingency fee case. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 (recognizing that "in some cases of exceptional success an enhanced award may be justified"); *see also Blum v. Stenson,* 465 U.S. 886, 887, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (finding that counsel failed to carry her burden of demonstrat-

ing upward adjustment was necessary to determination of reasonable fee and rejecting district court's conclusion that complexity of litigation, novelty of issues, high quality of representation, and great benefit to the class warranted a 50% contingency enhancement); *but see Dague,* 505 U.S. at 562, 112 S.Ct. 2638 (rejecting use of contingency enhancement, concluding that enhancement on grounds of risk of loss and nonpayment "would likely duplicate in substantial part factors already subsumed in the lodestar" calculation).

**13.** The order appealed from provides that "20 percent of the total attorneys' fees or the sum of

determine an award by applying the factors set forth in *Bishop Coal* and *Pitrolo*.[14]

■ To assist the trial court in making its determination on remand, we offer the following guidance for consideration in making the fee award. The trial court needs to be mindful of the fact that the fee-shifting statute at issue contemplates that the fee award belongs to the successful complainant. *See* W.Va.Code § 5–11–13(c); *see also Stair v. Turtzo, Spry, Sbrocchi, Faul & Labarre,* 564 Pa. 305, 768 A.2d 299, 305 (2001) (recognizing that " 'it is the party, rather than the lawyer who is . . . eligible [to obtain statutory fee recovery]' ") (citing *Venegas v. Mitchell,* 495 U.S. 82, 87, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990)). Thus, in making a new fee award on remand, the trial court should make the statutory fee award to the plaintiff, rather than to her counsel. The purpose of fee-shifting statutes, such as that involved here, is to " 'benefit the employee, who would otherwise have to pay the contractual attorney fees out of his or her benefits recovered in the litigation,' " and not to serve as a fee enhancement mechanism for attorneys representing complainants in human rights actions. *Duhon v. Trend Serv., Inc.,* 809 So.2d 1222, 1227 (La.App. 3rd Cir.2002) (quoting *McCarroll v. Airport Shuttle, Inc.,* 773 So.2d 694, 700 (La.2000) and emphasis omitted).

■ Having recognized that fee-shifting statutes are intended to benefit the complainant by not reducing the value of their verdicts, any amount of a statutory fee award that is over and above the amount of the contractual obligation to remunerate counsel is properly an amount that can ultimately be awarded to the attorney.[15] A contingency fee arrangement is not a ceiling with regard to the fee awards that an attorney can receive where statutory fee-shifting is involved. In rejecting the notion that a contingent-fee agreement should limit the amount of fees recoverable in a federal civil rights action, the United States Supreme Court in *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), reasoned:

> Respondent cautions us that refusing to limit recovery to the amount of the contingency agreement will result in a "windfall" to attorneys who accept § 1983 actions. Yet the very nature of recovery . . . is designed to prevent any such "windfall." Fee awards are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent in advancing the successful claims. Accordingly, fee awards, properly calculated, by definition will represent the reasonable worth of the services rendered in vindication of a plaintiff's civil rights claim. It is central to the awarding of attorney's fees . . . that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case. The trial judge should not be limited by the contractual fee agreement between plaintiff and counsel.
>
> . . . . The attorney's fee provided for in a contingent-fee agreement is not a ceiling upon the fees recoverable under § 1988.

489 U.S. at 96, 109 S.Ct. 939; *accord Venegas,* 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (upholding plaintiff's counsel's right to collect reasonable contingent fee that exceeded statutory fee award on grounds that civil rights fee-shifting statute controls only what losing party must pay, not what the prevailing plaintiff must pay his lawyer); *Commonwealth v. PBS Coals, Inc.,* 677 A.2d 868 (Pa.1996) (holding that contingency fee agreement did not preclude attorney from receiving award of statutory attorney's fees).

■ In *Venegas,* the United States Supreme Court addressed how a plaintiff's freedom to contract with his or her attorney with

---

$8,617.99 should be awarded to Plaintiff's counsel, in addition to the forty (40) percent of the total verdict he will receive from the Plaintiff under their contingency fee arrangement."

**14.** While we recognize that the nature of the fee arrangement (i.e. fixed or contingent), is one of the *Bishop/Pitrolo* factors, we wish to emphasize that the amount which is determined to be reasonable as a statutory fee award is to be arrived at independent of any amount that may be agreed upon between complainant and counsel pursuant to a contingent fee arrangement.

**15.** *See infra* note 16 (discussing allocation of statutory fee award where fee arrangement is contingent and recognizing that there may be additional agreements between complainant and counsel regarding division of statutory fee award).

regard to fee arrangements impacts on the recovery of fees where a fee-shifting statute is involved. According to the high Court, the intent of the fee-shifting mechanism incorporated into the federal civil rights act is to assist potential complainants in securing "reasonably competent lawyers" and to "avoid having their recovery reduced by contingent-fee agreements." 495 U.S. at 86, 89, 110 S.Ct. 1679. The United States Supreme Court has made clear, however, that fee-shifting statutes cannot "protect[ ] plaintiffs from having to pay what they have contracted to pay, even though their contractual liability is greater than the statutory award that they may collect from losing opponents." *Id.* at 89, 110 S.Ct. 1679. Thus, the enforceability of a contingent-fee contract is not affected by the presence of a fee-shifting statute that imposes responsibility on a third-party for attorney's fees and expenses. *See Venegas,* 495 U.S. at 87, 110 S.Ct. 1679 (observing that nothing "in the legislative history ... persuades us that Congress intended [42 U.S.C.] § 1988 to limit civil rights plaintiffs' freedom to contract with their attorneys")

While fee structures that involve a contingent-fee arrangement are clearly enforceable despite the existence of a fee-shifting statute, attorneys are not entitled to receive both the statutory fee award and the full amount of the contingent fee.[16] Other courts have recognized that this would amount to either double recovery or a windfall, and we agree. *See State ex rel. Okla. Bar Ass'n v. Weeks,* 969 P.2d 347, 356 (Okla.

1998) (observing that "[t]hose federal courts which have considered the issue of an attorney's recovery of both the court awarded statutory fee and the entirety of the contingent fee amount, have disallowed the arrangement as inappropriate and a windfall to the attorney"); *Venegas v. Skaggs,* 867 F.2d 527, 534 n. 7 (9th Cir.1989) ("Where the district court concludes that a contingent fee that exceeds the statutory award is reasonable, the plaintiff may be required to pay the difference between the [§ ] 1988 award paid by the defendant and the contingent fee. The plaintiff's attorneys are not entitled to *both* the statutory award and the full amount of the contingent fee.") (citation omitted), *aff'd. sub nom. Venegas v. Mitchell,* 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990).

When this matter is remanded to the circuit court, the trial court must first determine whether there was a separate and distinct factual development that was required to support the four additional theories of recovery originally pursued by Appellant. For example, the fees associated with the quid pro quo sexual harassment theory may be recoverable if the same core facts supported that alternate theory of sexual discrimination. *See Plyler v. Evatt,* 902 F.2d 273, 280 (4th Cir.1990) (stating that "where the issues presented ... in separate claims involve the same common core of facts or related legal theories, the case 'cannot be viewed as a series of discrete claims'" and the trial court should " 'focus on the significance of the overall relief obtained by the

**16.** During oral argument of this case, Appellant's counsel stated that Appellant had agreed, pursuant to their contingent fee contract, to give up 50% of the statutory fee award to her counsel. *See Bishop,* 181 W.Va. at 82 n. 10, 380 S.E.2d at 249 n. 10 (observing that "none of the rules concerning the award of a 'reasonable fee' under a fee shifting statute impairs the right of lawyer and client to make a private fee arrangement"); *accord Cambridge Trust v. Hanify & King Prof'l Corp.,* 430 Mass. 472, 721 N.E.2d 1, 6 (1999) (observing that "[a]n attorney is free, subject to the provisions of the rules of professional conduct, to negotiate such terms as attorney and client may agree on concerning the manner in which awards of attorney's fees are to be divided"). Because we do not have that private fee agreement before us, we do not rule upon the fee arrangement between Appellant and her counsel.

This Court previously noted in *Bishop* that "[d]epending on the terms of the contract, 'reasonable attorneys' fees' can either be taken as a credit toward the lawyers's contingent share or they can be added to the gross award and the total sum split." 181 W.Va. at 82 n. 10, 380 S.E.2d at 249 n. 10. The preferred method in this Court's opinion, and apparently the general trend, is to utilize the former approach where the statutory fee award is used to offset the amount the complainant owes to counsel under the contingency fee award. *See Cambridge Trust,* 721 N.E.2d at 7 (discussing allocation of court-awarded attorney's fees in conjunction with contingency fee agreements and observing that absent specific retainer agreement, general trend is to calculate contingency fee based on amount of judgment and then credit fee award as offset against contingency fee owed).

plaintiff in relation to the hours reasonably expended on the litigation'") (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933). The overarching concern for the trial court is that the fees awarded must be reasonable. *See Blanchard*, 489 U.S. at 92, 109 S.Ct. 939 (noting that the " 'criterion for the court is ... what is reasonable'") (quoting *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 718 (5th Cir.1974)); W.Va.Code § 5–11–13(c) (providing for "reasonable" attorney's fees and costs); *see also Bostic v. American Gen. Fin., Inc.*, 87 F.Supp.2d 611 (S.D.W.Va.2000) (concluding that 15% reduction of statutory fee award was necessitated by virtue of inadequate documentation of hours and additional 5% reduction was required with regard to submitted time entries based on excessive billing and overlap to assure reasonable award). In reviewing the submitted fees on remand, the trial court should take note that the most critical of all the factors looked to in determining a statutory award of attorney's fees is the degree of success obtained. *See Hensley*, 461 U.S. at 436, 103 S.Ct. 1933; *Brodziak*, 145 F.3d at 196. And, consistent with the previous practice of this Court, Appellant is entitled to attorney's fees for services rendered in connection with this appeal because she has substantially prevailed in this Court in connection with her continued prosecution of a civil rights action. *See* Syl. Pt. 2, *Orndorff v. West Virginia Dep't of Health*, 165 W.Va. 1, 267 S.E.2d 430 (1980).

Based on the foregoing, the decision of the Circuit Court of Harrison County is reversed and remanded for entry of a statutory award of attorney's fees pursuant to West Virginia Code § 5–11–13(c) that takes into consideration the factors identified in this opinion necessary for making a reasonable award of attorney's fees and which includes specific findings of fact and conclusions of law to support its determination.

Reversed and remanded.

DAVIS, C.J., concurring.

In this proceeding, the majority of the Court has found that the trial court committed error in the method it used to determine attorney fee's in this case. I fully concur in the decision reached by the majority's opin-ion. I have chosen to write separately, however, to clarify Syllabus point 6 thereof.

In Syllabus point 6 of the majority's opinion, the Court has held that "[w]hile fee structures that involve a contingent-fee arrangement are clearly enforceable despite the existence of a fee-shifting statute, attorneys are not entitled to receive both the statutory fee award and the full amount of the contingent fee." I believe this syllabus point is in artfully constructed. "Its present wording is susceptible of misinterpretation and should be more narrowly drawn." *Taylor v. Sears, Roebuck & Co.*, 190 W.Va. 160, 165, 437 S.E.2d 733, 738 (1993) (Workman, C.J., concurring).

I believe that Syllabus point 6 intended to say, and should have said, that a contingency fee agreement is enforceable despite the existence of a fee-shifting statute. However, there must be an off-set so that an attorney only recovers, under the fee-shifting statute, that amount of the award that is above what was obtained by the attorney under the contingency fee agreement. The remaining amount of the statutory fee award goes to the client.

In view of the foregoing, I respectfully concur.

MAYNARD, Justice, concurring, in part, and dissenting, in part:

I do not agree with the majority that an award of attorney's fees of $8,617 constitutes an abuse of discretion under the facts of this case. However, I agree that counsel should not receive the statutory fees in addition to the 40% contingency fee.

Under our traditional rule, one of the factors considered in determining a reasonable attorney's fee is the result obtained. The majority opinion goes a step further and declares that, "[i]n reviewing the submitted fees on remand, the trial court should take note that *the most critical of all the factors looked to in determining a statutory award of attorney's fees is the degree of success obtained.*" Slip op. at 20 (citations omitted) (emphasis added). Essentially, says the majority, and I agree, the amount of attorney fees should be reasonable in relation to the

result obtained. I believe that application of this rule to the instant case indicates that the attorney's fee award of $8,617 is not unreasonable.

The facts show that the jury awarded Appellant the relatively small sum of only $12,300. In other words, Appellant's counsel had a very limited degree of success. Given this small award, I believe that a statutory fee award of $8,617, which is 70% of the total jury award obtained by Appellant, is not so unreasonable that the majority can properly conclude that the circuit court abused its wide discretion.

Although the majority finds that the circuit court arrived at the sum of $8,617 by using improper methodology, our law provides that, "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syllabus Point 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965). Thus, despite the fact that the circuit court's application of a percentage reduction based on the ratio of claims pursued to claims prevailed arguably is improper under the instant facts, I believe that the statutory fee award of $8,617 bears a reasonable relationship to the $12,300 jury award.

An additional problem I have with the majority opinion is its ambiguity on the issue of the distribution of a statutory attorney's fee award once the contingency fee has been deducted. The majority opinion holds, and I concur, that "[w]hile fee structures that involve a contingent-fee arrangement are clearly enforceable despite the existence of a fee-shifting statute, attorneys are not entitled to receive both the statutory fee award and the full amount of the contingent fee." Syllabus Point 6, slip op. The majority opinion then explains in a footnote that it prefers using the statutory fee award to offset the amount the plaintiff owes to counsel under the contingency fee award. Additionally, the majority opinion provides that "any amount of a statutory fee award that is over and above the amount of the contractual obligation to remunerate counsel is properly an amount that can ultimately be awarded to the attorney." Slip op. at 16 (footnote omitted). Does the majority opinion intend to say that counsel always receives the remainder of the statutory fee after the contingency fee is deducted? Is the complainant ever to receive any of the remainder of the statutory fee award? Can the statutory fee award ever be split 50/50 between the complainant and his or her attorney? Or, should this matter be decided by an agreement between the complainant and counsel that addresses the issue? Unfortunately, the majority opinion gives little guidance and thus raises more questions than it answers. As a result, circuit courts are left almost completely without guidance.

Accordingly, for the reasons set forth above, I respectfully concur, in part, and dissent, in part, to the majority opinion.

## BENJAMIN, Justice, concurring:

I write separately to underscore what should be, but unfortunately isn't always, readily apparent: an attorney is entitled to collect a *reasonable* fee—not a windfall fee—for the representation of a client—whether the fee is determined by a statutory fee award, a contingent fee agreement, or on a per-hour basis. Indeed, counsel should be reminded that it is not the court's duty alone to ensure a reasonable fee in a case. It is first and foremost the professional obligation of the attorney to do so. Rule 1.5 of our *Rules of Professional Conduct* mandates that a lawyer's fee be reasonable.[1] By enforcing

1. Rule 1.5. Fees.
   (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
   (1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and results obtained;

this Rule, courts protect everyone's access to justice, regardless of financial circumstances.

To protect the fairness and integrity of our judicial system, courts must ensure that a fee such as that at issue in this case be reasonable based on such factors as the difficulty of the work performed, the degree of success achieved, the amount of work reasonably needed to achieve the result, the societal benefit to bringing and/or defending the action, the prevailing local rate for comparable professional services, and so on.[2] Since a primary purpose for so-called fee-shifting statutes is a hoped-for societal benefit, I think the degree of success achieved is necessarily a primary component in a court's determination of an appropriate fee. While the application of a percentage formula by a court may be arbitrary, the degree of success achieved in a given case may include considerations of the actual benefit to the recovering plaintiff; the likely, not simply "possible", benefit which society will receive; and the number of actual people who will benefit from the result in the case. The court, I believe, may likewise consider such factors as how efficiently the recovering side prosecuted its case in relation to the difficulty and novelty of the issues raised. In this instance, professional fees awarded pursuant to fee-shifting statutes, ought not become incentives for attorneys to waste judicial resources by use of "shotgun-style" pleadings, unnecessary discovery, and related unneeded actions.[3] A court is, in my opinion, duty bound to insure that fees are fair, reasonable and that they do not exploit either the parties or the judicial system[4]

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

(b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or

(2) a contingent fee for representing a defendant in a criminal case.

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representations;

(2) the client is advised of and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

(4) The requirements of "services performed" and "joint responsibility" shall be satisfied in contingent fee cases when: (1) a lawyer who is regularly engaged in the full time practice of law evaluates a case and forwards it to another lawyer who is more experienced in the area or field of law being referred; (2) the client is advised that the lawyer who is more experienced in the area or field of law being referred will be primarily responsible for the litigation and that there will be a division of fees; and, (3) the total fee charged the client is reasonable and in keeping with what is usually charged for such matters in the community.

2. A complete list of the factors determining reasonableness in this jurisdiction is set forth in syllabus point five of the majority opinion. *See also*, W. Va. R. Prof. Cond. 1.5, n. 1, *supra*.

3. The determination of reasonable fees may, however, properly include the court's consideration of the degree to which a recovering party was forced to respond to frivolous and otherwise vexatious strategies utilized by the non-recovering party.

4. It has correctly been said that:

Courts can open their doors to the public, but they must rely on lawyers to guide the litigant through the passageways. In entrusting the

It is within a court's inherent power to supervise the collection of attorney fees, including monitoring contingent fee agreements for reasonableness and examining the same in light of statutory fee awards. *Jenkins v. McCoy*, 882 F.Supp. 549, 553–5 (S.D.W.Va.1995). In any fee dispute, it is the attorney's burden to demonstrate the reasonableness of the fee claimed. *Jenkins*, 882 F.Supp. at 553. When an attorney seeks a statutory fee award, he or she has both a legal and ethical duty to disclose the existence of any contingency agreement so that it may be considered in analyzing the appropriate statutory award to be made, if any. *Id.* at 558. Such a disclosure is mandated to protect the public confidence in the judicial system [5] and to ensure the reasonableness of any fee obtained by the attorney.

In *Jenkins*, then-Chief Judge Charles Haden,[6] considered a situation similar to that posed in the instant case. In *Jenkins*, a statutory attorney fee award was ordered in a civil rights action brought pursuant to 42 U.S.C. § 1988. After the award was made, the court learned that the plaintiff's attorney (who was initially appointed to represent the plaintiff by the court) had also received more than forty percent of the jury award from his client. In negating the contingency fee agreement, Chief Judge Haden had the following appropriately harsh words for attorneys seeking a windfall fee recovery by taking advantage of both statutory and contingent fee awards:

> The Court emphasizes it exercises its inherent powers over attorney fee agreements reluctantly. Such matters are, in all but rare instances, left to the parties. However, the Court must be mindful of its duties to oversee lawyers, who are its officers after all. When lawyers seek to take unfair advantage of unsophisticated clients and then conceal such shenanigans from the Court, all in an effort to gain financially at a client's expense, the Court vigorously must protect the integrity of the system of civil justice by utilizing its inherent oversight authority.
>
> Lawyers perform an important societal function, acting as advocates for those unschooled in the law. Among the most noble and admired services a lawyer can provide is representation to an indigent. Such representation deserves reasonable compensation and Congress has given its encouragement by enacting § 1988 and similar fee providing statutes. [An attorney] is to be commended for agreeing to appointment as counsel for the Plaintiff and his success in this case has been and is applauded by the Court. He was entitled to reasonable fees under § 1988. But by violating the trust of both the Plaintiff and this Court he unfortunately tarnishes the profession as a whole, encouraging the conventional wisdom that lawyers are greedy and self-serving.

*Id.* at 559–60 (internal citations omitted).

This Court appropriately negated the fee initially awarded by the circuit court herein. An attorney in not entitled to both a statutory fee award and a contingency awards absent appropriate offsets which insure the rea-

---

litigant to the legal profession, courts recognize the possibility that a self-serving lawyer may ignore the best interests of the courts and his clients. Attentive to the demands of the public interest, courts retain supervisory power over the attorney-client relationship. Fees are central to that relationship, and contingent fee arrangements are therefore subject to the courts' supervision.
*Jenkins v. McCoy*, 882 F.Supp. 549, 555 (S.D.W.Va.1995), *quoting, Cooper v. Singer*, 719 F.2d 1496, 1505 (10th Cir.1983).

**5.** An attorney has a recognized personal interest in a statutory fee award. As noted by then-Chief Judge Haden in *Jenkins,*

where the lawyer has a heightened personal interest in the outcome of litigation, as he does in pure fee litigation, greater, not lesser candor, is to be expected of counsel. Although the right to pursue the fee belongs to the client, the public perception is that the lawyer has a vested interest in the fee, so maintenance of the integrity of the judicial system demands a greater level of candor from the lawyer. "The [judicial] system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end." *United States v. Shaffer Equipment Co.*, 11 F.3d at 457–58.

**6.** Chief Judge Haden was also a former Justice of this Court from 1972 to 1975.

sonableness of the total fee obtained. Upon remand, I strongly encourage the circuit court to consider the reasonableness of the *total* fee to be obtained by counsel. Absent special circumstances, such as protecting the fundamental rights of citizens against governmental discrimination or intrusion, an attorney's recovery of fees by court order should not be grossly disproportionate to the actual relief obtained on the client's behalf.